UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELVIN DAVIS, et al.,

                Plaintiffs,                    No. 20-11060

v.                                        Honorable Nancy G. Edmunds

MAGNA INTERNATIONAL OF AMERICA, INC.,
      et al.
                Defendants.
_____/

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS THE
COMPLAINT AND STRIKING JURY DEMAND [14]**

      This matter is before the Court on Defendants' motion to dismiss complaint and strike jury demand. (ECF No. 14.) Plaintiffs filed a response, Defendants filed a reply, and the parties thereafter filed a series of "notices of supplemental authority" and "responses in opposition to notice of supplemental authority." (ECF Nos. 17, 18 and 19-27.) Having reviewed and considered the parties' briefs and supporting evidence, the Court has determined that the allegations, facts, evidence and legal arguments are presented adequately in the written submissions so that oral argument would not significantly aid the Court's decision. For these reasons, the Court will decide the matter without a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). For the reasons set forth below, Defendants' motion to dismiss is denied.

**I.**      **Facts and Background**

      The four named plaintiffs in this action are individuals who invested in a 401k plan called the Magna Group of Companies Retirement Savings Plan (the "Plan") during their

employment with Magna International of America, Inc. ("Magna"). (Compl. ¶¶ 1, 13-16, 36, ECF No. 1.) The plaintiffs are Melvin Davis, Wayne Anderson, Shawnetta Jordan and Dakota King ("Plaintiffs"). (Compl. ¶¶ 13-17, 19, 20.)  Magna is incorporated in Delaware with its principal place of business in Troy, Michigan. (Compl. ¶ 19; Defs.' Memo. 2, ECF No. 14.) It is a subsidiary of Magna International Inc., a global automotive supplier that specializes in mobility technology. (Compl. ¶¶ 19-20; Defs.' Memo. 2.)

This class action is brought pursuant to sections 409 and 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1109 and 1132.  (Compl. ¶ 1.) Plaintiffs bring this action against the Plan's fiduciaries: Magna International of America, Inc. ("Magna" or the "Company"), the Board of Directors of Magna (the "Board") and its members during the class period, the Magna International of America, Inc. Investment Committee ("Investment Committee") and its members during the class period, and the United States Pension and Retirement Savings Committee and its members during the class period (the "Committee"). (Compl. ¶ 1.) Plaintiffs define the class period as April 30, 2014 through the date of judgment in this action (the "Class Period"). (Compl. ¶ 4.)

The Plan is a defined contribution retirement plan. (Compl. ¶ 2.) In such a plan, the participants have individual accounts and the Plan provides for benefits based upon the amount contributed, and any income, gains and losses, expenses, and any forfeitures which may be allocated to the participant's account. (Compl. ¶ 37.)  At all times during the Class Period the Plan had more than one billion dollars in assets under management. (Compl. ¶ 5.) As of December 31, 2018, the Plan had $1.6 billion in assets under management for all funds. (Compl. ¶¶ 5, 49, 52.)

Plaintiffs allege that during the Class Period, Defendants as fiduciaries of the Plan breached the duties they owed to the Plan, to Plaintiffs and to other participants in the Plan by

> (1) failing to objectively and adequately review the Plan's investment portfolio with due care to ensure that each investment option was prudent, in terms of cost; and (2) maintaining certain funds in the Plan despite the availability of identical or similar investment options with lower costs and/or better performance histories as required by the Plan's investment policy.

(Compl. ¶ 6.)  Plaintiffs' claims are breach of the fiduciary duties of loyalty and prudence, brought against the Investment Committee Defendant and its members (First Claim), and failure to adequately monitor fiduciaries, brought against Magna, the Board and the Committee Defendants (Second Claim). (Compl. ¶¶ 9, 128-34, 135-41.) Defendants move to dismiss these claims under Federal Rules of Civil Procedure 12(b)(1) (lack of standing) and 12(b)(6) (failure to state a claim). (Defs.' Mot. Dismiss, ECF No. 14.)

## II.    Legal Standard

Defendants bring this motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), alleging the Plaintiffs lack constitutional standing and alleging the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(1), 12(b)(6).

The Sixth Circuit noted that under the United States Supreme Court's heightened pleading standard laid out in *Bell Atlantic Corp. v. Twombly*,  550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "a complaint only survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Estate of Barney v. PNC Bank, Nat'l Ass'n*, 714 F.3d 920, 924 (6th Cir. 2013) (internal quotations and citations omitted). The court in *Estate of Barney* goes on to state that under *Iqbal*, "[a] claim is plausible when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotations and citations omitted). When considering a motion to dismiss under Rule 12(b)(6), the court takes the factual allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff. *See Crugher v. Prelesnik*, 761 F.3d 610, 614 (6th Cir. 2014).

Furthermore, while the "plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Estate of Barney*, 714 F.3d at 924 (citing *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). If the plaintiffs do "not nudge[ ] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. Finally, the Court must keep in mind that "on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 555 (quotation and citation omitted).

"[D]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)). "A court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." *Id.* at 336. "In addition, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Id.* at 335-36; *see also Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir.1999) (documents not attached to the

pleadings may still be considered part of the pleadings when the "document is referred to in the complaint and is central to the plaintiff's claim") (internal quotation marks and citations omitted). Defendants have submitted several exhibits with their motion to dismiss, including excerpts from publicly available annual Department of Labor Form 5500 reports for the years 2016 through 2018; excerpts from the *401k Averages Book*, the 1998 Department of Labor Study (and an underlying article), and the ICI Study cited in Plaintiffs' complaint; and the Schedule of Investment for the Principal U.S. Property Separate Account publicly available from Principal's website. (ECF Nos. 14-1 through 14-11.) They also submitted a declaration from Jose Bustamante, Senior Program Manager of the Retirement Program at Magna. (ECF No. 14-12.) Plaintiffs have not objected to these exhibits and the Court finds that they can be considered in this motion to dismiss.

## III.   Analysis

### A.   Whether Plaintiffs Have Standing

> [B]efore a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue. Article III [of the United States Constitution], of course, gives the federal courts jurisdiction over only 'cases and controversies,' and the doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process.

*Whitmore v. Arkansas*, 495 U.S. 149, 154-55 (1990). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the . . . constitutional power to adjudicate it." *In re UBS Erisa Litigation*, 2014 WL 4812387 (S.D.N.Y. Sept. 29, 2014) (citation omitted), *aff'd sub nom. Tavernas v. UBS AG*, 612 F.App'x 27 (2d Cir. 2015). "In considering a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, a district court may consider factual matters outside the pleadings and resolve factual disputes." *Anestis v. United States*, 749 F.3d 520, 524 (6th Cir. 2014) (citing *Ohio*

*Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). Three elements must be satisfied for standing to exist: injury in fact, causation and redressability. *See Lujan v. Defenders Of Wildlife*, 504 U.S. 555, 560-61 (1992). Such standing must be established "for each claim." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

Defendants argue that Plaintiffs invested in only two of the Plan's fund options that they challenged, and therefore have not alleged an "injury in fact" that is "concrete and particularized" as to all of the challenged options. (Defs.' Mot. 16, ECF No. 14.) Plaintiffs King and Jordan invested in the Principal LifeTime Hybrid 2050 collective investment trust ("CIT"), and Plaintiffs Davis and Anderson invested in the Principal LifeTime Hybrid 2030 CIT.[1] (Bustamante Decl. ¶¶ 4-7, ECF No. 14-2.) Defendants argue that Plaintiffs lack standing to assert claims for the remaining eleven investment options at issue, because for these, Plaintiffs have not alleged an "injury in fact" that is "concrete and particularized." *Lujan*, 504 U.S. at 560.

29 U.S.C. § 1109 provides liability for breach of fiduciary duty. 29 U.S.C. § 1132(a)(2) provides that a civil action for relief under section 1109 may be brought by "a participant, beneficiary or fiduciary . . . ." 29 U.S.C. § 1109(a)(2). A "participant" is defined as "any employee or former employee of an employer, . . . , who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . , or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. § 1002(7). "It is well settled, . . . that suit under § 1132(a)(2) is 'brought in a representative capacity on behalf of the plan as a whole' and that remedies under § 1109

---

[1] The Court considers the Bustamante declaration submitted by Defendants for the purpose of establishing each Plaintiff's participation in specific funds offered by the Plan. (ECF No. 14-12.)

'protect the entire plan.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009) (citation omitted); *see also Cassell v. Vanderbilt University*, 2018 WL 5264640, at *3 (M.D. Tenn. Oct. 23, 2018) ("Courts have recognized that a plaintiff who is injured in his or her own plan assets - and thus has Article III standing - may proceed under Section 1132(a)(2) on behalf of the plan or other participants even if the relief sought sweeps beyond his own injury."). Plaintiffs are still required to plead "injury in fact that is causally related to the conduct" they seek to challenge. *Braden*, 588 F.3d at 593.

Defendants argue that for breach of fiduciary duties under ERISA, Plaintiffs "cannot claim that either an alleged breach of fiduciary duty" or "a deprivation of [an] entitlement to that fiduciary duty, in and of themselves constitutes an injury-in-fact sufficient for constitutional standing." *Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 121 (2d Cir. 2009). Yet Kendall's claim is distinguishable from that herein. *Kendall* stated that "[e]ven in cases where plaintiffs need not show an individualized harm, they must still allege some injury in the form of a deprivation of a right as a result of a breach of fiduciary duty conferred by ERISA." *Id.* at 120. Kendall "only allege[d] that Avon deprived her of her right to a plan that complies with ERISA, . . ." *Id.* at 121.

*In re UBS ERISA Litigation*, 2014 WL 4812387, at *6, is similarly distinguishable. Defendants argue that Plaintiffs cannot show an injury "simply by claiming that the [Plan] itself suffered losses." *In re UBS ERISA*, at *6. The *UBS ERISA* court noted that there were only two paragraphs in the entire complaint "that, when read in conjunction, purport to allege an injury-in-fact sustained by Plaintiff." *Id.* at *6. In *UBS ERISA* there was only one fund at issue: the UBS Company Stock Fund; all claims and alleged breaches related to this particular fund and the amended complaint contained "no facts as to whether or

when Plaintiff directed [the plan] to purchase or sell shares of the UBS Company Stock Fund on her behalf, and therefore provides no basis from which an injury-in-fact can be inferred." *Id.* at *8. The plaintiff tried to save her claims by relying on her trading history to demonstrate injury-in-fact. But the trading history document was heavily redacted and omitted information necessary to determine the number of shares involved in each transaction. *See id.* The court concluded that it was provided "no basis whatsoever for the Court to infer an injury-in-fact flowing from that investment," especially in light of the dearth of facts in the amended complaint. *See id.*

Defendants also rely on *Thole v. U.S. Bank N.A.*, to argue that Plaintiffs lack standing where they never invested in eleven of the challenged fund options. *Thole* involved a defined benefit plan, not a defined contribution plan. *See Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020). The *Thole* plaintiffs attempted to argue a trust-based theory of standing, alleging "an equitable or property interest in the plan" and that "in essence . . . injuries to the plan are by definition injuries to the plan participants." *Id.* at 1619. The Court disagreed. "[T]he participants in a defined-benefit plan are not similarly situated to the beneficiaries of a private trust or to the participants in a defined-contribution plan." *Id.* at 1619.

> [A] defined-benefit plan is more in the nature of a contract. The plan participants' benefits are fixed and will not change, regardless of how well or poorly the plan is managed. The benefits paid to the participants in a defined-benefit plan are not tied to the value of the plan. Moreover, the employer, not plan participants, receives any surplus left over after all of the benefits are paid; the employer, not plan participants, is on the hook for plan shortfalls.

*Id.* at 1620.

Where the Supreme Court makes such a distinction in *Thole*, this Court declines Defendants' invitation to extend *Thole* to defined contribution plans. Defendants attempt to make an analogy between the *Thole* plaintiffs' fixed monthly benefits that were not affected by the performance of *any* plan assets, and the eleven funds in which the four named Plaintiffs at bar *did not* invest and therefore would not be affected by fees or performance in these eleven funds. This analogy ignores Plaintiffs' allegations of redressable injury in two of the funds, resulting from the breaches by Defendants as to all of the funds. *Braden* remains consistent with *Thole's* recognition that "Article III standing requires a concrete injury even in the context of a statutory violation."[2] *Id.* at 1620-21; *Braden*, 588 F.3d at 592 ("Braden has satisfied the requirements of Article III because he has alleged actual injury to his own Plan account.").

The Plaintiffs have satisfied the requirements of Article III because they allege actual injury to their own plan accounts[3] and they allege injury in fact that is causally related to the conduct they challenge on behalf of the Plan. (Compl. ¶¶ 17, 18, 70, 71, 120 (allegation related to "revenue sharing for each of the Principal target date funds"; Plaintiffs participated in target date funds), 132, 140.) The Court denies Defendants' motion to dismiss as to Fed. R. Civ. P. 12(b)(1).

---

[2] *Braden* also distinguishes defined benefit plan participants consistent with *Thole's* reasoning. *See Braden*, 588 F.3d at 593 (discussing *Harley v. Minn. Mining & Mfg. Co.*, 284 F.3d 901 (8th Cir. 2002), and noting that "[b]ecause the plan retained a surplus notwithstanding the losses, . . . the plaintiffs' own benefits remained unchanged and they accordingly suffered no harm" and therefore did "not have standing to sue on behalf of the plan under § 1132(a)(2)").

[3] Defendants concede that Plaintiffs have standing to assert claims with respect to those two options. (Defs.' Memo. 5, ECF No. 14.)

**B.      Whether Plaintiffs Have Stated A Claim For Relief**

**1.      Whether The First Claim For Relief Alleges A Plausible Claim That The Investment Committee Breached The Duty Of Prudence**

Defendants argue that even if the Court finds Plaintiffs have standing, they have failed to state a plausible claim for breach of ERISA's duty of prudence. Fed. R. Civ. P. 12(b)(6). Under 29 U.S.C. § 1104(a)(1)(B),

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and-- . . . (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; . . . .

29 U.S.C. § 1104(a)(1)(B). Plaintiffs allege in part that the Investment Committee breached its duty of prudence by (1) selecting and retaining investment options that were too expensive; and (2) allowing the Plan to pay excessive recordkeeping fees. (Defs.' Memo. 8, ECF No. 14, citing Compl. ¶¶ 78-79, 91-96, 1010-103, and 125, ECF No. 1.) Defendants argue that these allegations are insufficient because they do not allege anything about the Investment Committee's process on these issues. (*Id.*) These are not Plaintiffs' sole allegations when the complaint is taken as whole.

Defendants cite *Pfeil v. State Street Bank and Trust Co.*, for its reiteration of the "prudent-process standard": "The test for determining whether a fiduciary has satisfied his duty of prudence is whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment." *Pfeil v. State Street Bank and Trust Co.*, 806 F.3d 377, 384 (6th Cir. 2015) (citation omitted); *see also* Defs.' Memo 8. Defendants argue that Plaintiffs have not alleged anything about the Investment Committee's

10

processes with respect to investment options or recordkeeping fees, the two ways in which Plaintiffs allege that the Investment Committee breached its duty of prudence. *Pfeil* was decided on a motion for summary judgment, after discovery, and does not address the sufficiency of allegations in a complaint.

Plaintiffs allege circumstantial facts supported by charts making benchmark comparisons, and ask the Court to "reasonably infer" a breach has occurred, pointing out that they "do not have actual knowledge of the specifics of Defendants' decision-making process with respect to the Plan, including Defendants' processes (and execution of such) for selecting, monitoring and removing Plan investments, because this information is solely within the possession of Defendants prior to discovery." (Compl. ¶ 18.) *See generally Pinnell v. Teva Pharmaceuticals USA, Inc.*, 2020 WL 1531870, at *1 (E.D. Pa. Mar. 31, 2020) (applying Third Circuit caselaw; "The participants, mindful of our Court of Appeals' direction and Rule 11, amended their complaint and plead charts, comparative studies, and specific facts necessary to proceed into discovery. We deny the fiduciaries' motion to dismiss.") Comparisons to meaningful benchmarks of competing funds can establish a "plausible claim for breach of the fiduciary duty of prudence." *Id.* at *4 (citation omitted).

The Court finds *Braden* instructive in recognizing that "[n]o matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Braden*, 588 F.3d at 598. "If plaintiffs cannot state a claim without pleading facts which tend systemically to be in the sole possession of defendants, the remedial scheme of the statute will fail, and the crucial rights secured by ERISA will suffer." *Id.* More than one court has acknowledged the hurdle

that plaintiffs face in bringing such a case. *See Miller v. AutoZone, Inc.*, 2020 WL 6479564, at *3 (W.D. Tenn. Sept. 18, 2020) (citing *Braden*, 588 F.3d at 598, to note that "[a]t the pleadings stage, courts should employee a 'holistic evaluation of an ERISA complaint's factual allegations' and 'draw reasonable inferences in favor of the nonmoving party as required' to effectively serve ERISA's remedial purpose.")

### a.   Investment Options

Defendants challenge Plaintiffs' comparison of the challenged investment options with the median fees for plans of a similar size from an Investment Company Institute ("ICI") study, presented in the table at paragraph 81 of Plaintiffs' complaint. Defendants argue that ERISA does not require fiduciaries to manage a plan toward any benchmark, including fees higher than median. In *Kong v. Trader Joe's Company*, the plaintiffs alleged that the Plan's funds exceeded median expense ratios and that suggested impropriety on the part of the Plan fiduciaries. *See Kong v. Trader Joe's Com.*, 2020 WL 7062395, at *4 (C.D. Cal. Nov. 30, 2020). The *Kong* court concluded that "relying on median or averages is insufficient" for the reasons including that the "Complaint only alleges 'median' fees rather than specific fee benchmarks they believe Defendants are required to reach." *Kong*, 2020 WL 7062395, at *4.

Plaintiffs point out that courts are not in agreement on what is necessary to plead a violation of ERISA's duty of prudence based on excessive fees. Another district court in this circuit has noted that "the duty of prudence is an objective standard that focuses on the fiduciary's decision-making process, not the results of the process." *AutoZone,* 2020 WL 6479564, at *3. Other courts have concluded that when such allegations are combined with other facts and allegations from which the court may infer that the

defendants "engaged in a flawed decision-making process by selecting and retaining the challenged investment", the plaintiff has "provided enough factual allegations 'to create a plausible inference that defendants' process of selecting funds and their monitoring of the funds was imprudent.'" *Bouvy v. Analog Devices, Inc.*, 2020 WL 3448385, at *9 (S.D. Cal. June 24, 2020) (citing *Terraza v. Safeway, Inc.,* 241 F. Supp. 3d 1057, 1076-77 (N.D. Cal. 2017) and *White v. Chevron Corp.* 2017 WL 2352137, at *14 (N.D. Cal. May 31, 2017), aff'd 752 F.App'x 453 (9th Cir. 2018)) ("[T]he Plan's investment expenses were higher than industry averages: at least 18 of the 20 mutual funds offered in 2016 had above-average expenses.").

Here, Plaintiffs include allegations that the "funds in the Plan have stayed relatively unchanged since 2014" and that the majority of the identified funds had expense ratios that were more expensive that comparable funds in similarly sized plans with over $1b in assets. (Compl. ¶ 81.) Plaintiffs allege that when a large Plan like this one, with over a billion dollars in assets, has options that "approach the retail cost of shares for individual investors or are simply more expensive than the average or median institutional shares for that type of investment, a careful review of the plan and each option is needed for the fiduciaries to fulfill their obligations to the plan participants." (Compl. ¶ 78.)

Defendants raise additional issues related to the ICI study cited in Plaintiffs' Complaint. They point out that it only reviews mutual funds, but most of the challenged options in the Plan are collective investment trusts or insurance company separate accounts, therefore the comparison is "apples to oranges" from the start. *See Davis v. Washington Univ.*, 960 F.3d 478, 485 (8th Cir. 2020) (noting comparisons were "not close enough", for example variances in percentage of international holdings, or index funds

13

(passively managed) compared with an actively managed stock account; "The bottom line is that there is simply not enough in the complaint to infer that a reasonably prudent fiduciary would have refused to stick with CREF Stock Account").

In response, Plaintiffs argue that this favors Defendants "because mutual funds are more expensive than collective trusts." (Pls.' Resp. Br. 15, ECF No. 17; Compl. ¶¶ 81, 88.) To the extent that Defendants argue the merits of Plaintiffs' comparisons, such arguments are premature in a motion to dismiss. Such arguments "invite the kind of factual analysis that is inappropriate at the pleading stage." *AutoZone*, 2020 WL 6479564, at *4 ("AutoZone's argument that the Court should give limited weight to fee comparisons between actively managed GoalMaker funds and low-cost Vanguard index funds invites the kind of factual analysis that is inappropriate at the pleading stage. . . . [T]he parties' dispute over the propriety of comparing actively-managed funds to index funds raises questions of fact and law that have not been addressed by the Sixth Circuit.)

The Court must take Plaintiffs' well-pleaded factual allegations as true and draw every reasonable inference from them in their favor. *See Crugher*, 761 F.3d at 614; *see also Nicolas v. Trustees of Princeton Univ.*, 2017 WL 4155369, at *5 (D.N.J. Sept. 19, 2017) (holding "Defendant raises factual questions about whether the alternative funds Plaintiff suggests . . . are apt comparisons—and, therefore, whether the underperformance Plaintiff depicts is an accurate portrait . . . Such questions do not warrant dismissal—to the contrary, they suggest the need for further information from both parties.").

Plaintiffs also allege that the Investment Committee should have selected lower-cost share classes of mutual funds, where available. (Compl. ¶¶ 87, 91-97.) Plaintiffs'

complaint acknowledges that one of the reasons for selecting such funds may be the "revenue sharing" that the funds pay to defray a Plan's recordkeeping costs. (Compl. ¶ 96.) Defendants argue that selecting the more expensive share class does not plausibly suggest a fiduciary breach. Yet some of the cases cited by Defendant acknowledge that that there are cases that accept such allegations and they distinguish these cases in part on the basis of the plaintiffs therein having alleged additional acts of wrongdoing or imprudence. *See e.g., White v. Chevron Corp.*, 2017 WL 2352137, at *12-14 (pointing out that claims in *Braden* were "accompanied by allegations that the funds paid kickbacks to the plan's trustee in exchange for including the funds in the plan" and in *Tibble v. Edison, Int'l*, 729 F.3d 1130,1137 (9th Cir. 2013), *vacated on other grounds*, 575 U.S. 523 (2015), the "basis of liability was not the mere inclusion of retail-class shares, as the court had rejected that claim on summary judgment. Instead, beneficiaries prevailed on a theory that [the company] has failed to investigate the possibility of institutional-share class alternatives."); and *Davis v. Salesforce.com, Inc.*, 2020 WL 5893405, at *5 (N.D. Cal. Oct. 5, 2020) ("[I]n a number of those cases, the plaintiffs therein had alleged numerous acts of wrongdoing, which, when viewed collectively, were found sufficient to state a claim.").

"Courts examining this issue have concluded that investment in a retail class fund where an identical institutional class fund with lower fees is available can violate the duty of prudence." *Disselkamp v. Norton Healthcare, Inc.*, 2019 WL 3536038, at *4 (W.D. Ky. Aug. 2, 2019) (citation omitted). When considering a motion to dismiss, a district court in this circuit considered the plaintiffs' allegations that the defendants failed to purchase institutional class mutual funds and concluded that "[p]laintiffs' claim that [the] [d]efendants failed to investigate lower cost options is not a fact couched as a legal

conclusion which should be stricken when considering a motion to dismiss. Rather, it is a statement of fact that the Court will accept as true for purposes of this 12(b)(6) motion." *Id.* at \*5.

Defendants effectively ask the Court to consider each of Plaintiffs' allegations in a vacuum. Plaintiffs ask the Court to consider the selection of higher-cost shares in the overall context of the other allegations, specifically those related to recordkeeping and administrative costs in the Plan. Plaintiffs allege the "Defendants failed to prudently monitor the Plan to determine whether the Plan was invested in the lowest-cost share class available for the Plan's mutual funds, collective trusts and separate accounts." (Compl. ¶ 87.)

In paragraph 101 of the complaint, Plaintiffs allege that "[d]uring the Class Period, Defendants failed to consider materially similar but cheaper alternatives to the Plan's investment options" and included a chart of 2019 expense ratios to demonstrate that the "expense ratios of the Plan's investment options were more expensive by multiples of comparable passively-managed and actively-managed alternative funds in the same investment style." (Compl. ¶ 101.) Plaintiffs alleges that a "reasonable investigation would have revealed the existence of these lower-cost alternatives." (Compl. ¶ 101.)

"Nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund . . . ." *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009) (stated in the context of considering the plaintiffs' contention that the defendant "violated its fiduciary duty by selecting investment options with excessive fees"). Plaintiffs counter that given the availability of other less costly passively-managed investments not selected by Defendants, they plausibly plead that Defendants failed in their fiduciary duties to

consider the power of the Plan to "obtain favorable investment products." *Sweda v. University of Pennsylvania*, 923 F.3d 320, 329 (3d Cir. 2019) ("Fiduciaries must also consider a plan's "power ... to obtain favorable investment products, particularly when those products are substantially identical—other than their lower cost—to products the trustee has already selected.").

"[A] court assesses a fiduciary's performance by looking at process rather than results, 'focusing on a fiduciary's conduct in arriving at [a] ... decision ... and asking whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment.'" *Id.* at 329 (citations omitted). Courts recognize that "[f]iduciaries have latitude to value investment features other than price (and, indeed, are required to do so)." *Cassell v. Vanderbilt University*, 285 F. Supp. 3d 1056, 1067 (M.D. Tenn. 2018). "[T]he appropriate inquiry on these claims involves issues of fact, which cannot be determined on a motion to dismiss. Again, these issues are better suited for summary judgment, when discovery is complete and the record is more developed." *Id.* Plaintiffs' allegations here, coupled with suggested comparisons, permit the Court to reasonably infer imprudence by the fiduciaries. (Compl. ¶¶ 101-104.)

**b.   Recordkeeping Fees**

Plaintiffs allege that the Investment Committee breached its duty of prudence by failing to observe "the excessive fees being paid to the recordkeeper and [taking] corrective action." (Compl. ¶ 125.) Plaintiffs also allege that Defendants' "failure to monitor and control recordkeeping compensation cost the Plan millions of dollars per year and constituted separate and independent breaches of the duties of loyalty and prudence." (Compl. ¶ 125.) Recordkeeping expenses can be paid directly from plan assets, or

17

indirectly by the plan's investments in a practice known as revenue sharing, or a combination of both, or by a plan sponsor. (Compl. ¶ 111.)

Plaintiffs allege that the Plan's "per participant recordkeeping fee would have ranged from $61 to $89 during the Class Period." (Compl. ¶ 118.) This estimate is based on the supposition that "all the indirect revenue sharing reported on the Plan's form 5500 and the estimated amounts of revenue sharing based on Plaintiffs' investigation[4] (or even a fraction of it) were paid to Principal." (Compl. ¶ 118.) Plaintiffs allege that data from the *401k Averages Book* shows that "for plans with 2,000 participants and $200 million in assets . . . , the average recordkeeping/administration fee through direct compensation, based on data obtained in 2019, was $5 per participant. . . . Expressed as a range, $0 per participant is at the low end and $43 per participant is at the high end." (Compl. ¶ 119). "[B]etween 2014 and 2018 the average direct recordkeeping cost for the Plan was $21 per year according to the forms 5500" and that recordkeeping costs increased each year from 2016 through 2018 while the number of Plan participants also increased. (Comp. ¶ 120.) Relying on the *401k Averages Book*, Plaintiffs assert that recordkeeping costs should drop as plans increase in size by assets and participants. (Comp. ¶ 121.) Plaintiffs rely on a 1998 study by the Department of Labor for the premise that as the number of participants grows, a plan can negotiate lower recordkeeping fees, and as plan asset size increases, costs per participant decrease. (Comp. ¶¶ 122, 123.) They conclude that given the size of the Plan's assets, the total number of participants, and a general trend towards lower recordkeeping expenses in the marketplace as a whole, the Plan

---

[4] "Per a document Plaintiffs obtained during their investigation, up until 2019 or 2020, Principal was paid .25% in revenue sharing for each of the Principal target date funds." (Compl. ¶ 118 n. 12.)

could have obtained lower cost comparable or superior recordkeeping services. (Comp. ¶ 124.)

Defendants take issue with Plaintiffs' reliance on *Spano v. Boeing* and *George v. Kraft Foods Global, Inc.*, to show that large plans can bargain for low recordkeeping fees, because these cases involved two of the largest plans in the country, with multiple billions of dollars in assets. *See Spano v. The Boeing Co.*, 125 F. Supp. 3d 848, 853 (S.D. Ill. 2014) ("multi-billion dollar defined contribution plan"); and *George v. Kraft Foods Global, Inc.*, 641 F.3d 786, 788 (7th Cir. 2011) ("between $2.7 billion and $5.4 billion in assets"). The Plan at issue here had more $1.6 billion in assets at the end of 2017 and 2018. (Compl. ¶ 5.)

Defendants argue that courts have dismissed cases with higher recordkeeping fees than those alleged here, pointing out that the range here is lower than in these other cases. *See, e.g., Divane v. Northwestern University*, 953 F.3d 980, 984 (7th Cir. 2020) ($153 to $213); *Martin v. CareerBuilder, LLC*, 2020 WL 3578022, at *1 (N.D. Ill. July 1, 2020) ($136.39 to $222.43); *White*, 2017 WL 2352137, at *15 ($167 to $181). *Divane* is distinguishable in that the parties engaged in discovery for more than a year before the dismissal was granted. *See Divane*, 953 F.3d at 987; *see also White*, 2017 WL 2352137, at *17-19 (despite the court's extended discussion about the weaknesses of plaintiffs' recordkeeping claim, the court ultimately found that the claim was time-barred). *CareerBuilder* relied on Seventh Circuit precedent and *Divane*. *See CareerBuilder,* 2020 WL 3578022, at *4. As Plaintiffs point out, the cases cited by Defendants do not establish a presumption of reasonableness for fees in ERISA, at best *CareerBuilder* noted that the

fees were "not inconsistent with prudent portfolio management." *CareerBuilder, LLC*, 2020 WL 3578022, at *4.

With respect to Defendants' second argument, at this stage Plaintiffs need not allege why the fees were not justified by the services provided when considering the plan as a whole. *See Kruger v. Novant Health, Inc.*, 131 F. Supp. 3d 470, 479 (M.D.N.C. 2015) ("Plaintiffs state a plausible claim that the failure to monitor the sudden spike in recordkeeping fees rendered their judgment imprudent. . . . Whether or not those fees were actually imprudent is a question of fact and not one that can be resolved on the pleadings.").

> While Defendants claim that Plaintiffs have not alleged facts regarding why the amount of the recordkeeping fees are excessive, the services provided, or how the fees charged to the Plan were excessive in light of those services, this court finds that those are the types of facts warranting discovery, and, therefore, dismissal at this stage is not appropriate.

*Id.* at 479.

Defendants argue that the data Plaintiffs cited in the complaint undermines the claim that the fees were excessive, pointing out that the $5 average annual recordkeeping fee cited by Plaintiff is from a 2019 study in the *401k Average Book* and is "through direct compensation." (Defs.' Memo. 19, ECF No. 14.) Defendants explain that any revenue sharing used to pay for recordkeeping services is listed separately and that adding this hard dollar average charge to the average revenue sharing amounts from the same source ($160) yields an average recordkeeping fee of $165 per participant. (Defs.' Memo. 19, ECF No. 14, citing Wood Decl.) This is almost twice the amount of the alleged Plan fees. (*Id.*) Defendants' argument also attacks the relevancy of Plaintiffs' sources, which Plaintiffs defend in their response. The argument itself highlights the necessity for

discovery and the potential existence of issues of fact that would be inappropriately resolved at this stage.

Plaintiffs' factual allegations share a distinction recognized by other courts in considering whether the plaintiffs have plead sufficient allegations to plausibly state a claim for breach of prudence. The Plan's investment consultant was Principal Financial, the recordkeeper was also Principal Financial, and the trustee was Principal Trust, and Plaintiffs allege upon information and belief that "the recordkeeper and trustee are both affiliates of Principal." (Compl. ¶ 126 and n. 15.) Out of the 20 funds offered by the Plan, 17 of them bear Principal's name. (Compl. ¶ 126.) Plaintiffs allege that such a structure "is rife with potential conflicts of interest because Principal and its affiliates were placed in positions that allowed them to reap profits from the Plan at the expense of Plan participants." (Compl. ¶ 126.) Courts have taken similar allegations into account when determining whether other claims, for example share class claims, were enough to plausibly state a claim for the breach of the duty of prudence. *See Kurtz v. Vail Corp.*, 2021 WL 50878, at * 10, ___ F. Supp. 3d ___ (D. Colo. Jan. 6, 2021) (distinguishing *Terraza*, 241 F. Supp. 3d at 1075-76, by noting that the *Terraza* court refused to dismiss share class claims where the plaintiff alleged more than that, including a "potential inappropriate relationship and influence over the fiduciary's decision-making" because the Plan included JP Morgan Funds, JP Morgan Chase Bank was the trustee, and JP Morgan Plan Retirement Services was the recordkeeper)).

Plaintiffs allege that fiduciaries should conduct requests for proposal regularly to remain informed about fee trends and that Defendants failed to undertake such steps to manage and control the Plan's recordkeeping and administrative costs. (Compl. ¶¶ 115,

116.) Like *Nicolas v. Trustees of Princeton University*, Plaintiff alleges specific breaching conduct. *See Nicolas*, 2017 WL 4455897, *1 ("specific breaching conduct: failing to conduct competitive bidding process; failing to use significant bargaining power to negotiate lower fees; retaining two recordkeepers; and failing to remove two particularly unreasonable funds. Other courts to have considered substantially similar complaints have found them to survive motions to dismiss for similar reasons.").

To the extent Defendants point out Plaintiffs' lack of "allegations about the Committee's actual process for monitoring recordkeeping fees," this argument again highlights the need for discovery. Plaintiffs have made several allegations from which the Court can infer imprudence related to the recordkeeping fees. Here, Plaintiffs have made sufficient allegations related to reviewing, monitoring and ensuring that the recordkeepers "were being paid reasonable and not excessive fees." *Cassell*, 285 F. Supp. 3d at 1065 ("What is reasonable depends on the factual circumstances and on the services provided. This claim may be more appropriately addressed on summary judgment.") "Defendants may ultimately defeat this claim of unreasonable administrative fees by showing that the fees were reasonable and not excessive, but the Court cannot engage in such factual speculation at this stage of the litigation." *Id.* at 1065-66.

Plaintiffs' complaint is akin to those cases in which the plaintiff "alleged numerous acts of wrongdoing, which, when viewed collectively, were found sufficient to state a claim." *Davis*, 2020 WL 5893405, at *5 (citing *Bouvy*, 2020 WL 3448385, at *9) (Defendants rely on *Davis*, one of the cases for which they filed a notice of supplemental authority, and while *Davis* supports Defendants' position, it also distinguishes *Bouvy* and *Braden*, for the very reasons the Court finds *Braden* instructive in this instance.) The Court

finds that Plaintiffs' complaint sufficiently states a claim for breach of fiduciary duty and dismissal would be inappropriate at this stage of litigation.

### 2. Whether Second Claim For Relief Alleges A Plausible Claim That Defendants Breached The Duty of Loyalty

Under ERISA's duty of loyalty, "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... for the exclusive purpose of ... providing benefits to participants and their beneficiaries[ ] and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A).

> To state a loyalty-based claim under ERISA, a plaintiff must do more than simply recast purported breaches of the duty of prudence as disloyal acts. Rather, a plaintiff must allege facts that permit a plausible inference that the defendant engaged in transactions involving self-dealing or in transactions that otherwise involve or create a conflict between the trustee's fiduciary duties and personal interests. *Id.* In other words, to implicate the concept of loyalty, a plaintiff must allege plausible facts supporting an inference that a fiduciary acted *for the purpose of* providing benefits to itself or some third party.

*Cassell*, 285 F. Supp. 3d at 1062 (citation omitted).

Plaintiffs rely on their allegations that Defendants selected high-cost investments with revenue sharing so that they could use a portion of the fees to pay inflated fees to Principal Financial Group and that it is strongly inferred that the Defendants took these actions to "save itself (sic) costs at the expense of Plan participants, and/or (2) to favor its recordkeepers over the Plan participants." (Pls.' Resp. Br. 24, ECF No. 17); *see Johnson v. Providence Health & Services*, 2018 WL 1427421, at *9 ("Defendants are correct that in pleading her duty of loyalty claims, Plaintiff relies almost entirely on the facts alleged in support of her breach of prudence claims. . . . However, the Court can still

23

find a breach of the duty of loyalty in spite of this overlapping pleading, so long as the complaint includes sufficient facts that plausibly state a claim.")

Plaintiffs have included allegations that Defendants may not have acted singularly toward benefitting the Plan beneficiaries and have sufficiently stated a claim for breach of loyalty.

### 3.    Whether Plaintiffs Stated A Claim As To The Monitoring Defendants

In Count II of the complaint, Plaintiffs allege that Magna, the Board, and the PRS Defendants (together the "Monitoring Defendants") failed to adequately monitor the Investment Committee in violation of 29 U.S.C. 1109(a) and 1132(a)(2). (Compl. ¶¶ 135-41.) Defendants' only argument for dismissal of this claim assumes that Plaintiffs failed to allege breaches of fiduciary duty as to the Investment Committee. As set forth above, the Court found that Plaintiffs have sufficiently pled that claim therefore Defendants' motion to dismiss as to Count II will be denied.

## IV.    Motion to Strike Jury Demand

Plaintiffs withdraw their jury demand. (Pls.' Resp. Br. 25 n. 20, ECF No. 17.)

## V.    Conclusion

For the reasons stated herein, the Court DENIES Defendants' motion to dismiss the complaint (ECF No. 14) and the jury demand is stricken.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: March 31, 2021

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2021, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager