UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELVIN DAVIS, et al.,

       Plaintiffs,                                   No. 20-11060

v.                                                 Honorable Nancy G. Edmunds

MAGNA INTERNATIONAL OF AMERICA, INC.,
     et al.
       Defendants.
_____/

### AMENDED OPINION AND ORDER DENYING WITHOUT PREJUDICE PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [44]

This matter is before the Court on Plaintiffs' motion for class certification. (ECF No. 44.) Defendants filed a response, Plaintiffs filed a reply and supplemental authority. (ECF Nos. 58, 60, 70, 74.) The Court held a hearing on this matter on March 7, 2023.

**I.    Facts and Background**

Two named plaintiffs remain in this action, Melvin Davis and Dakota King ("Plaintiffs")[1]. The Plaintiffs move for an order certifying this action as a class action, appointing Plaintiffs as the representatives of the proposed class, and appointing Plaintiffs' counsel as counsel for the class. (ECF No. 44.)

Plaintiffs are individuals who invested in a 401k plan called the Magna Group of Companies Retirement Savings Plan (the "Plan") during their employment with Magna International of America, Inc. ("Magna" or the "Company"). (Compl. ¶¶ 1, 13-16, 36, ECF

---

[1] The other two named Plaintiffs were dropped from this action on Plaintiffs' unopposed motion when they were "no longer able to serve as . . . Class Representatives due to personal circumstances." (ECF No. 37; Text Only Order 10/18/2021.)

1

No. 1.) Magna is incorporated in Delaware with its principal place of business in Troy, Michigan. (Compl. ¶ 19; Defs.' Memo. 2, ECF No. 14.) It is a subsidiary of Magna International Inc., a global automotive supplier that specializes in mobility technology. (Compl. ¶¶ 19-20; Defs.' Memo. 2.)

This class action is brought pursuant to sections 409 and 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1109 and 1132. (Compl. ¶ 1.) Plaintiffs bring this action against the Plan's fiduciaries ("Defendants"): Magna, the Board of Directors of Magna (the "Board") and its members during the class period; the Magna International of America, Inc. Investment Committee ("Investment Committee") and its members during the class period; and the United States Pension and Retirement Savings Committee and its members during the class period (the "Committee"). (Compl. ¶ 1.) Plaintiffs define the class period as April 30, 2014 through the date of judgment in this action (the "Class Period"). (Compl. ¶ 4.)

The Plan is a defined contribution retirement plan. (Compl. ¶ 2.) In such a plan, the participants have individual accounts and the Plan provides for benefits based upon the amount contributed, and any income, gains and losses, expenses, and any forfeitures which may be allocated to the participant's account. (Compl. ¶ 37.) At all times during the Class Period the Plan had more than one billion dollars in assets under management. (Compl. ¶ 5.) As of December 31, 2018, the Plan had $1.6 billion in assets under management for all funds. (Compl. ¶¶ 5, 49, 52.)

Plaintiffs allege that during the Class Period, Defendants as fiduciaries of the Plan breached the duties they owed to the Plan, to Plaintiffs and to other participants in the Plan by

2

> (1) failing to objectively and adequately review the Plan's investment portfolio with due care to ensure that each investment option was prudent, in terms of cost; and (2) maintaining certain funds in the Plan despite the availability of identical or similar investment options with lower costs and/or better performance histories as required by the Plan's investment policy.

(Compl. ¶ 6.) Plaintiffs' claims are breach of the fiduciary duties of loyalty and prudence, brought against the Investment Committee Defendant and its members (First Claim), and failure to adequately monitor fiduciaries, brought against Magna, the Board and the Committee Defendants (Second Claim). (Compl. ¶¶ 9, 128-34, 135-41.)

The Court previously denied Defendants' motion to dismiss these claims under Federal Rules of Civil Procedure 12(b)(1) (lack of standing) and 12(b)(6) (failure to state a claim). (ECF No. 28.) Plaintiffs now seek class certification.

## II. Standard for Class Certification

"A district court has broad discretion to decide whether to certify a class." *In re Whirlpool Corp. Front–Loading Washer Products Liability Litigation*, 722 F.3d 838, 850 (6th Cir. 2013) (citation omitted); *see also In re Am. Medical Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

To obtain class certification pursuant to Rule 23 "the plaintiffs must show that '(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *In re Whirlpool*, 722 F.3d at 850 (quoting Fed. R. Civ. P. 23(a)).

Plaintiffs must also show that the class "falls within one of the three types of class actions under Federal Rule of Civil Procedure 23(b)." *Beattie v. CenturyTel, Inc.*, 511 F.3d

554, 560 (6th Cir. 2007). Plaintiffs seek certification under Fed. R. Civ. P. 23(b)(1)(B), which requires that

> [P]rosecuting separate actions by or against individual class members would create a risk of: (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interest of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests."

Plaintiffs also argue that certification would be appropriate under Fed. R. Civ. P. 23(b)(1)(A), which is satisfied if prosecuting separate actions would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Plaintiffs bear the burden to show that "the class certification prerequisites are met." *In re Whirlpool*, 722 F.3d at 851 (citation omitted).

"Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 466 (2013) (citation omitted). "[D]istrict courts may not 'turn the class certification proceedings into a dress rehearsal for the trial on the merits.'" *In re Whirlpool*, 722 F.3d at 851-52 (quoting *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 811 (7th Cir. 2012)).

### III. Analysis

#### A. Fed. R. Civ. P. 23(a) Prerequisites

Defendants do not dispute that Plaintiffs have satisfied the numerosity and commonality requirements of Rule 23(a). (ECF No. 58, PageID.6901 n.2.) Defendants argue that Plaintiffs fail to satisfy the adequacy and typicality requirements of Rule 23.

##### 1. Undisputed Prerequisites: Numerosity and Commonality

Under Rule 23(a)(1), the numerosity requirement is satisfied if "the class is so numerous that joinder of all members is impracticable." Plaintiffs provide with their motion for class certification the declaration of Mark K. Gyandoh, a partner of the Plaintiffs' law firm Capozzi Adler, P.C., and chair of the Fiduciary Practice Group at that firm. (Decl. of Mark K. Gyandoh in Support of Plaintiffs' Mot. for Class Cert., ECF No. 45.) Plaintiffs' evidence shows that the Plan participants numbered over 20,000 each year during the class period. (ECF No. 44, PageID.531; ECF No. 45, PageID.557.) The Court finds that Plaintiffs have satisfied the numerosity requirement. *See e.g., Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) (finding that a class of 800 current and former employees was "a number well beyond the point that joinder would be feasible").

The commonality requirement is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The "claims must depend upon a common contention . . . ." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "What matters to class certification . . . [is] the capacity of a class-wide proceeding to generate common *answers* apt to drive

the resolution of the litigation." *Id.* (internal quotations and citations omitted, emphasis in original).

Plaintiffs argue that the overarching questions of law and fact that apply to all Plan participants are "whether Defendants breached fiduciary duties owed to the Plan and its participants by: selecting and retaining investment options in the Plan despite the high cost of the funds in relation to other comparable investments; failing to investigate the availability of lower-cost share classes of certain mutual funds in the Plan; and failing to monitor or control the compensation paid for recordkeeping and administration costs." (ECF No. 44, PageID.532-33.) Plaintiffs also point out that all Plan participants were subject to the Committee's Plan investment decisions. (ECF No 44, PageID.533.) The Court finds that these common questions of law and fact satisfy the commonality requirement under Rule 23(a)(2).

### 2. Objections to Rule 23(a) Prerequisites: Adequacy and Typicality

#### a. Adequacy

Defendants specifically object to the typicality and adequacy of the representative named Plaintiffs and their claims. To satisfy the adequacy requirement, the Court must find that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

> This court looks to two criteria for determining adequacy of representation: '1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.' This court also 'reviews the adequacy of class representation to determine whether class counsel are qualified, experienced and generally able to conduct the litigation.'

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012) (citations omitted).

Plaintiffs maintain that the named Plaintiffs are adequate representatives because they "have identical legal and effectively identical financial interests in this action as do the proposed class members." *Sacerdote v. New York University*, 2018 WL 840364, at *4 (S.D.N.Y. Feb. 13, 2018). Defendants argue that the named Plaintiffs are inadequate as class representatives because they have criminal convictions, allegedly evidenced dishonesty, and have demonstrated a lack of understanding of the class claims. (ECF No. 58, PageID.6901.)

### i. Adequacy: Criminal History

"To judge the adequacy of representation, courts may consider the honesty and trustworthiness of the named plaintiff." *Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402, 431 (6th Cir. 2012) (citations omitted). Defendants point out that Plaintiff Davis pleaded guilty to conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343 and 1349 in 2011 in this District Court in a case assigned to a different judge. He was sentenced to three years of supervised release, which ended in 2013. The Court agrees with the classification of the crime as one of dishonesty. Plaintiffs do not dispute that it was a crime of dishonesty. Instead, Plaintiffs argue that "neither Plaintiffs' actions raise a credibility issue directly relevant to the claims at issue in this case." (ECF No. 60, PageID.8237.) Plaintiffs argue that "the past transgressions of Plaintiffs have no bearing on the focus of this case," and rely on case law to defend the adequacy of representation.

In *Gooch v. Life Investors Insurance*, the defendants accused the named plaintiff of having committed insurance fraud years prior to the class action. *See Gooch*, 672 F.3d at 431. Though the plaintiff had been charged, the charges against him had been dropped. *See id.* When asked about it at his deposition in the class action case, he

7

admitted the charge. *See id.* "He did not mention that, while testifying at the trial of his codefendants, he admitted facts comprising insurance fraud. Yet [he] was not charged with insurance fraud." *Id.* The court noted that "[h]is failure to volunteer related information to a nonspecific question does little to undermine his credibility." *Id.* Even in the face of several other "statements and omissions" in his first deposition that the court deemed "dubious," the Sixth Circuit ultimately found that "applying the deferential standard of review applicable to credibility determinations on appeal, the district court did not clearly abuse its discretion in finding that, despite these questions, Gooch is adequately credible to serve as class representative." *Id.* Plaintiffs here also point out that the named-Plaintiff Davis does not possess an overwhelming financial stake in the outcome of this case that would put him at odds with the other class members.

Defendants argue that "evidence of a prior conviction may cause a fact finder to concentrate on issues of credibility at the expense of the class's claims." (ECF No. 58, PageID. 6902.) In *Jamison v. First Credit Services*, the court noted that "the named plaintiff's conviction was "obviously a conviction for fraud, which is sufficient by itself to render Jamison an inadequate representative under the case law. This conviction is admissible and may be offered to impeach his credibility with a factfinder. As a result, there is a strong likelihood that the jury will focus on Jamison's credibility and not the claims of a potential class." *See Jamison v. First Credit Services, Inc.*, 290 F.R.D. 92, 105 (N.D. Ill. Mar. 28, 2013) ("numerous courts have found that 'a fraud conviction undermines a proposed class representative's adequacy to represent the class'"). The Court notes a distinction between *Jamison* and several of the cases in which a representative was found inadequate based on a prior conviction, and the case at bar. This will be a bench trial and

8

not a jury trial. The risk that a jury will focus on the named plaintiffs' credibility and not the claims of the potential class is not present. The court also notes that the focus in this ERISA breach of fiduciary duty action is on Defendants' conduct. In *Jamison*, the court had noted that the risk was "heightened by facts that uniquely pertain to Jamison." *Id.*

Yet many cases exist in which courts found prior fraud convictions troubling. In *Schleicher v. Wendt*, 2009 WL 761157 (S.D. Ind. Mar. 20, 2009), one of the named plaintiffs had been "convicted of criminal insurance fraud based on a claim he filed after a fire at his house." *Id.* at *3. Though the conviction was more than ten years old and had been expunged from the plaintiff's records, the court noted that "a criminal fraud conviction is extremely troubling for someone who seeks to serve as a fiduciary for absent class members asserting they are the victims of a fraudulent scheme." *Id.* "The cases plaintiffs cite do not support the remarkable suggestion that a person convicted of criminal fraud would be a suitable class representative, especially in a fraud case." *Id.* The court concluded that this plaintiff was not an adequate class representative, noting that it "will not force class members to rely on a representative who has admitted to fraud." *Id.*

Defendants cite *Pope v. Harvard Banschares, Inc.*, 240 F.R.D. 383 (N.D. Ill. Nov. 16, 2006), for the premise that tax fraud convictions rendered the class representative inadequate. (ECF No. 58, PageID.6903.) In a slightly more complicated fact pattern, the actual named-representative had granted her son-in-law a power of attorney to negotiate on the matter. The son-in-law acted on the named representative's behalf, attended depositions, made comments on the record and spoke with the plaintiff on breaks. *Id.* at 390. It was this son-in-law who had been convicted of filing false tax returns for himself and his corporation, and had testified in a related case, with a grant of immunity, as to a

9

false story he and others made up to cover their wrongdoing. *Id.* The court noted that "there is more" but that this was sufficient to find that he was "not the best choice for a fiduciary who must honestly look out for the best interest of absent class members instead of attempting to maximize his own." *Id.*; *see also Shi v. Sina Corp.*, 2005 WL 1561438, at *5 (S.D.N.Y. July 1, 2005) (considering honesty and trustworthiness as relevant factors in adequacy of lead plaintiff). Davis's prior fraud conviction combined with the lack of knowledge discussed in more detail below weighs against finding Davis to be an adequate representative.

Defendants argue that Plaintiff King has both a criminal history and gave "misleading" deposition testimony. (ECF No. 58, PageID.6904.) Plaintiff King testified that he had a DUI conviction when he was 18 years old, he had some charges for not having insurance (he didn't recall if they were dismissed or not), and had a disorderly conduct or "alcohol intoxication" charge, for which he says he still owes fines. (King Dep., ECF No. 58-3, PageID.6981-82.) He was not sure how many times he had been arrested, but did not think it was more than five times. Although King's charges do not go to veracity, the quantity of them is concerning, especially in the context of his testimony that he may still owe fines on one of them and the lack of specificity he is able to give about any of it.

On August 24, 2018, King was terminated from his position at Magna as a forklift driver.  (ECF No. 57-6 *sealed*.) Defendants allege that King gave misleading deposition testimony about this event because his testimony that he quit Magna conflicts with the employment records that says he was terminated. When King was asked, "Did you resign or were you terminated?" he responded, "I left. I quit." (ECF No. 58-3, PageID.6980-81.) He testified that he later sought reemployment at Magna and was told that because he

10

left like he did, he was "not rehirable." (ECF 58-3, PageID.6981.) Plaintiffs argue that King testified truthfully to the circumstances surrounding the end of his employment with Magna. The court has reviewed his testimony about the surrounding circumstances and his testimony is consistent with the employment record notation that he "walked out . . . ." (ECF 58-3, PageID.6981; ECF No. 57-6.)

Taken by itself, one could conclude that the discrepancy merely describes King's perception that he walked out before the Company then technically terminated him. In *Stanich v. Travelers Indem. Co.*, 259 F.R.D. 294 (N.D. Ohio 2009), the court considered a credibility argument based on the circumstances of the named plaintiff's recent termination from employment and his testimony regarding the same. *Id.* at 314. The plaintiff testified that he was fired for accepting three cases of wine on one occasion, yet later responded to further questions by indicating that he had accepted wine on two other occasions. He explained that the basis of the termination was accepting the wine on only one of the occasions. The court concluded that "[a]ll things considered, [the defendants'] argument is simply an attempt to convert confusing testimony (for which it was primarily responsible) into evidence of dishonesty." *Id.* at 314. The court noted that

> [A]pplicable authority does not support a finding of inadequacy based on a general challenge to [the plaintiff's] credibility. While there is authority . . . for the proposition that criminal convictions may raise credibility concerns significant enough to find the class representative inadequate, the general rule . . . is that unrelated unethical or even criminal conduct is not sufficient to support a finding of inadequacy.
>
> Unlike the situation at bar, the cases finding inadequacy based on general credibility concerns have involved putative class representatives with confirmed (as opposed to alleged) credibility weaknesses (e.g. criminal convictions involving dishonesty) or, at least, some connection between the unethical or dishonest conduct and the claims at issue in the class action.

11

*Id.* at 315. The representative "does not have to be perfect, however, merely adequate." *Id.* at 318.

In another set of circumstances, Plaintiff King's testimony could be considered simply confusing and alone would probably not be enough to find him an inadequate representative. Taken within the context of the King's past legal problems and the vagueness about the status of his prior alcohol-related convictions, the testimony discrepancy takes on more significance. At worst it may go to veracity, and even when viewed in a more forgiving light, it still raises questions about his ability to attend to details or information related to this case and to subsequently act on behalf of the Plaintiff class. These issues weigh against finding that these Plaintiffs are adequate class representatives.

### ii. Adequacy: Personal Knowledge of Case

Defendants also argue that the proposed named Plaintiffs fall short of the requirement that they "demonstrate a basic understanding of the facts and legal claims comprising their case." *In re AEP ERISA Litig.*, 2008 WL 4210352, at *2 (S.D. Ohio Sept. 8, 2009). "A court may deny class certification when class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." *Cassell v. Vanderbilt University*, 2018 WL 5264640, at *5 (M.D. Tenn. Oct. 23, 2018) (citing *Ross v. Ambercrombie & Fitch Co.*, 257 F.R.D. 435, 451 (S.D. Ohio 2009)). "However, it is well established that a named plaintiff's lack of knowledge and understanding of the case is insufficient to deny class certification unless his ignorance unduly impacts his ability to vigorously prosecute the action." *Id.*

"It is true that a class representative must have some commitment to the case, but that commitment can be demonstrated by appearing for depositions and knowing the obligations of his role; the proposed representative need not immerse himself in the facts of the case." *Pope*, 240 F.R.D. at 391. Like *Pope*, the named representatives have appeared for deposition and appear "to be aware and willing to comply with the responsibilities of serving as a lead plaintiff." *Id.*; *see also Cassell*, *2018 WL 5264630*, at *5 ("Plaintiffs have expressed their willingness to prosecute this case by filing suit and beginning the litigation process through initial disclosures, responding to a Motion to Dismiss and participating in case management.")

Defendants argue that Davis testified that he had never read the entire complaint prior to his September 2021 deposition. (ECF No. 58, PageID.6905; ECF No. 58-2, PageID.6945.) Plaintiff Davis testified that, as to the Complaint, he had not read the "document in its entirety before." (ECF No. 58-2, PageID.6945.) This area of questioning in the deposition shows however, that Davis knew that the complaint was filed in April 2020. And that the first time he read the complaint was "[p]robably in April or May of 2020." (ECF No. 58-2, PageID.6944.) He testified that he had probably looked at the document twice, the first time being "when it was presented to" him. (ECF No. 58-2, PageID.6945.) He looked at it again about seven days prior to his deposition. (*Id.*)

Defendants point out that Davis had "seen the Court's order on the motion to dismiss" within the week prior to his deposition. Defendants argue that when shown his interrogatory responses, Davis testified that he had not read them thoroughly. (ECF No. 58, PageID.6906.) The full testimony shows that he had not "had a chance to read this one thoroughly" and it is not clear whether he means in general or that he had just not

13

had a chance to read it thoroughly as it was being presented to him during the deposition. (ECF No. 58-2, PageID.6946-47.)

Defendants also complain that the deposition had been scheduled for a "date and time of Davis's choosing" yet he testified via Zoom "on his cell phone while in the middle of a work shift, sitting in a car in his employer's parking lot for most of the deposition and then moving indoors where other employees appeared to be present and working around him" and that he "could not be bothered to give his full attention for his 2.5 hour deposition confirms that he is either unwilling or unable to devote adequate time and attention to this case." (ECF No. 58, PageID.6906.) There is no specific allegation that Plaintiff's participation via Zoom impacted his ability to participate fully and respond to questions.

Defendants also complain that Plaintiff Davis "lacks even rudimentary knowledge about the claims." In support, they questioned him about specific issues in the case, including whether he alleges that investment options were "imprudent" and whether he is challenging record keeping fees, and he admitted that he did not know. (ECF No. 58, PageID.6907; PageID. 6944.) This questioning came in the long line of questions about whether Plaintiff Davis knew what the following were: share class, collective trust, actively managed mutual fund, passively managed mutual fund, comingled account, separate account and whether he knew "whether any collective trusts were offered through the Magna 401(k) plan." (ECF No. 58-2, PageID.6944.)

After further questioning with respect to the Complaint, Plaintiff Davis was asked whether he understood the parts of the Complaint that he had read. He was able to summarize that "they bought higher shares when they could have bought lower shares with the same result." (ECF No. 58-2, PageID.6945.) Plaintiff Davis's availability to date

14

indicates some willingness to participate in the class action on behalf of the class, but his very limited knowledge of the claims makes it unlikely that he is able to prosecute the action vigorously on behalf of the other class members- it will fall solely to class counsel to do so.

Defendants similarly challenge Plaintiff King's knowledge of the claims. Defendants allege that Plaintiff King "identified only 2017 to the present as the relevant period." (ECF No. 58, PageID.6908.) This appears to be a misrepresentation of King's testimony by Defendants' counsel. He had been asked "Roughly, when do you think there were problems with the Magna 401(k) plan?" To which he responded "I guess it would still be the same thing all the way up until now from 2017." It is not clear what the 2017 refers to. But he clearly testified, only 8 pages later in the deposition testimony:

Q. Do you know what time period this lawsuit covered?

A. April 30 to the present, April 30, 2014, I believe it is.

(ECF No. 58-3, PageID.6963.) That is the proposed definition of the class period: "April 30, 2014 through the date of judgment in this action." Plaintiff King also testified that he had read the Complaint. (ECF No. 5803, PageID.6961.)

Defendants also allege that in Plaintiff King's deposition he did not know whether the case is a class action. The testimony shows that when asked these questions, he wanted to defer to the pleadings and his counsel on questions related to procedure and details of the claims. He indicated that he understood that he was representing a potential class of 27,000 people and he defined his responsibilities as: "Basically, just go over everything that I've talked about with my attorneys and being knowledgeable and keep up to date with what's going on and converse back and forth with them." (ECF No. 58-3,

15

PageID.6963.) He testified that he has fulfilled those responsibilities by "going over the files that I've been sent, talking with my attorneys, you know, staying up to date with everything and what's going on." (*Id.*)

> As for Plaintiffs' understanding of the case, 'the complex nature of ERISA fiduciary breach claims requires investors to rely on their attorneys and hired experts, and such reliance does not make the plaintiffs inadequate representatives.' In a complex lawsuit, such as one in which the defendant's liability can be established only after a great deal of investigation and discovery by counsel against a background of legal knowledge, the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative.

*Cassell*, 2018 WL 5264640, at *5 (citations omitted).

Defendants rely on *Bell v. Pension Comm. of ATH Holding Co.*, 2018 WL 4385025 (S.D. Ind. Sept. 14, 2018), to argue that, in Defendants' words "Plan participants who can identify only that an ERISA class action involves 'high fees' are inadequate representatives." In *Bell*, the Court found that Bell was not an adequate representative. She "had a basic understanding of the Fee Class, she failed to show the same basic understanding with regards to the Money Market Fund Class. [She] could not articulate a minimal high level understanding of the Money Market Fund Claim and repeatedly stated that she relies on her counsel when questioned about that claim." *Id.* at *10.

In *Ramos v. Banner Health*, the court considered the defendants' challenge to at least six of seven named-plaintiffs "as knowing too little about their claims to be adequate class representatives, and as having improperly lent their names to litigation in which class counsel are fully in control, to the exclusion of the named Plaintiffs." *Ramos v. Banner Health*, 325 F.R.D. 382, 393 (D. Colo. Mar. 28, 2018). The *Ramos* court noted that

16

> While viewing the adequacy analysis on the facts presented as something of a close call, the Court is persuaded that the correct analysis is not '[w]hether ... the class representative is familiar with the specifics of the complaint,' but is instead directed at 'the more critical question of whether that individual will adequately represent the claims of the class by devoting time and effort to the lawsuit.' Furthermore, there is authority suggesting that '[t]he Supreme Court in *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 370–74, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966) expressly disapproved of attacks on the adequacy of a class representative based on the representative's ignorance,' and that an overly 'harsh application of the rules' here is not warranted.

*Id.* at 394 (citations omitted). Yet in *Ramos*, the court found that the plaintiffs' "understanding of their claims is, in any event, greater than that reflected in those few cases identified by Defendants wherein ignorance of the claims defeated class certification." *Id.* at 395.

The same cannot be said here. There is no case cited by Plaintiffs in which class representatives seemed less familiar with the claims or less prepared. If *Bell* shows what may be cited as a more stringent standard of knowledge than some other cases, the proposed class representatives in this case exhibit less knowledge than representatives in other cited cases. Even in *Ramos*, the court concluded that the plaintiffs "had essentially no knowledge of" one of the defendants alleged role or breaches of duty. *Id.* at 396. The court noted that "in contrast to a reasonable and sufficient articulation of their claims against Banner as a whole, . . . even years into this litigation, the named Plaintiffs profess no meaningful knowledge of Slocum's conduct or alleged ERISA violations, nor even any working knowledge of the relationship between Slocum and Banner." *Id.* at 397. As to that particular defendant, the court could not find that "the putative class representatives are acting in any meaningful way as parties. The Court is unpersuaded that the Plaintiffs are in a position to take any form of 'supervisory role over lead counsel,'

17

including as to decisions regarding settlement. Rather, as to Slocum, the Court finds Plaintiffs have done no more than 'simply lend their names to a suit controlled entirely by the class attorney[s].'" *Id.* at 396. The court concluded that this prevented the named plaintiffs from advancing class claims against the defendant Slocum. *See id*. at 397.

Under *Bell* or *Ramos*, the Court cannot find that these class representatives are adequate to protect the interests of the class. The Court finds that the past convictions and the lack of knowledge about the claims in this action undermine each named Plaintiff's adequacy to represent the class. For this reason, the Court cannot find that the representative parties can fairly and adequately protect the interests of the class.[2] Fed. R. Civ. P. 23(a)(4). Plaintiffs' failure to meet all of the requirements of Fed. R. Civ. P. 23(a) is a bar to class certification. Plaintiffs have asked to be allowed to name new Plaintiffs and the Court will allow 30 days to do so.[3] The Court will deny Plaintiffs' motion for class certification without prejudice.

    **b.    Typicality**

To satisfy the typicality prerequisite, the claim or defenses of the representatives must be typical of the claims or defenses of the class. *See* Fed. R. Civ. P. 23(a)(3). "A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *Young*, 693 F.3d at

---

[2] Defendants also argue that the Plaintiffs' legal theories create intra-class conflicts because Plaintiffs are pursing claims on two subjects: the Plan's record keeping fees and the Plan's investment options. The Court need not reach this issue and it is not a basis for the finding that these Plaintiffs are not adequate representatives.

[3] In their motion for class certification, Plaintiffs' counsel noted that it has done significant work on the potential claims and began investigating them months before filing the suit, so thirty days should be adequate.

542 (citation omitted). The typicality requirement of Rule 23(a)(3) "'limit[s] the class claims to those fairly encompassed by the named plaintiff's claims.'" *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (alteration in *Sprague*, citation omitted). Defendants raised their intra-class conflict arguments as one concerning both the adequacy of named plaintiffs and typicality. Defendants also challenge whether the named Plaintiffs have the financial motivation to "fairly and adequately protect the interests of the class, given their personal investment decisions and having invested in only one option." (ECF No. 58, PageID.6919-20.)

Plaintiffs set forth a straightforward argument that they satisfy the typicality prong of Rule 23. Both the plaintiffs and the proposed class members are investors in the Plan and they allege similar or identical harm stemming from Defendants' fiduciary breaches. *See Karg v. Transamerica Corp.*, 2020 WL 3400199, at *3 (N.D. Iowa Mar. 25, 2020) ("Plaintiffs assert that defendants 'breached their fiduciary duty by selecting and retaining the allegedly imprudent Challenged Funds.' As common investors in the Challenged Funds, plaintiffs and proposed class members allege similar harm resulting from defendants' alleged fiduciary breaches.").

> In ERISA breach of fiduciary duty cases, however, courts sometimes break the typicality requirement into three elements. The first element is that the claims largely 'arise from the same course of events — the[ parties'] participation in the Plan.' That element is satisfied here, as the claims arise from Plaintiffs' participation in the Plan. Second, plaintiffs must make 'similar legal arguments to prove liability — that Defendants mismanaged the Plan in violation of ERISA.' That element is also satisfied here, as Plaintiffs' argument is that Defendants mismanaged the Plan by including funds with excessive fees among the investment options. The third element is, effectively, that each plaintiff invested in at least one of the subject funds.

*Beach v. JPMorgan Chase Bank, National Association*, 2019 WL 2428631, at *7 (S.D.N.Y. June 11, 2019) (internal citations omitted). The typicality requirement is met.

### B. Basis for Class Certification

Plaintiffs ask for class certification under Rule 23(b)(1)(B), and allege that certification is also appropriate under Rule 23(b)(1)(A). Defendants did not oppose certification on either basis in their response. Because Plaintiffs did not satisfy Rule 23(a), the Court does not reach this issue.

### C. Appointing Plaintiffs' Counsel

Rule 23(g) provides that "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). In its motion for class certification, class counsel addressed the requirements of Rule 23(g) and Defendants did not oppose class counsel in their response. Again, the Court does not reach this issue where it has not certified the class.

## IV. Conclusion

For the reasons set forth above, the Court denies without prejudice Plaintiffs' motion for class certification (ECF No. 44.). Plaintiffs have 30 days to name new class representative parties.

SO ORDERED.

s/Nancy G. Edmunds  
Nancy G. Edmunds  
United States District Judge

Dated: March 27, 2023

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 27, 2023, by electronic and/or ordinary mail.

s/Lisa Bartlett  
Case Manager