UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELVIN DAVIS, et al.,

          Plaintiffs,                            No. 20-11060

v.                                         Honorable Nancy G. Edmunds

MAGNA INTERNATIONAL OF AMERICA, INC.,
      et al.
              Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [48]**

This matter is before the Court on Defendants' motion for summary judgment. (ECF No. 48.)  Plaintiffs filed a response, Defendants filed a reply, and the parties thereafter filed a series of "notices of supplemental authority" and "responses in opposition to notice of supplemental authority." (ECF Nos. 53, 59 and 62-65, 70, 71, 74, 75, 76, 83, 87.)  The Court heard this matter on March 7, 2023.

**I.**      **Facts and Background**

The named plaintiffs in this action are individuals who invested in a 401k plan called the Magna Group of Companies Retirement Savings Plan (the "Plan") during their past employment with Magna International of America, Inc. ("Magna")[1]. (Compl. ¶¶ 1, 13-

---

[1] On March 27, 2023, the Court entered an amended opinion and order denying Plaintiffs' motion for class certification and finding that the two named Plaintiffs who remained in the action at that time were not adequate representatives for the class. (ECF No. 80.) On May 16, 2023, the Court entered an order granting in part Plaintiffs' motion to name new class representatives and allowing Plaintiffs to file an amended complaint naming four new proposed named plaintiffs. (ECF No. 88.) Plaintiffs did not

16, 36, ECF No. 1; ECF No. 30, PageID.366, 377; ECF Nos. 81, 88.)   Magna is incorporated in Delaware with its principal place of business in Troy, Michigan. (Compl. ¶ 19; Defs.' Memo. 2, ECF No. 14.) It is a subsidiary of Magna International Inc., a global automotive supplier that specializes in mobility technology. (Compl. ¶¶ 19-20; ECF No. 30, PageID.372-73.) The Defendants are Magna, the Board of Directors of Magna (the "Board"), the Magna International of America, Inc. Investment Committee ("IC") and the United States Pension and Retirement Savings Committee ("Retirement Committee" or "RC") (IC and RC together, the "Committee"). The Committee is two committees at Magna who oversee the Plan and they consist of the same group of Magna employees that function as a single committee and meet four times per year. (Defs.' Exs. 9-10, 12/1/17 Committee Minutes.)

The Plan is a defined contribution retirement plan. (Compl. ¶ 2.) Plan participants contribute money to their accounts in the Plan and allocate their money among a range of investment options. (ECF No. 30, PageID.377-78.) The recordkeeper for the Plan is Principal Financial Group ("Principal"). Principal provided administrative and record keeping services from January 1, 2014 through the present. (ECF No. 78-31, PageID.10546.) The services included maintaining deposit and withdrawal records for participants accounts, communicating with participants, executing transactions for participants like loans and fund transfers, and providing investment education and call center support. (ECF No. 48-31, PageID.3123; ECF No. 50-8, PageID.4099.) Principal

---

seek to amend the claims in the action and neither party has moved to withdraw or amend their filings related to the motion for summary judgment.

also provided certain investment advisory services to the Plan from January 1, 2014 through February 14, 2021. (ECF No. 78-31, PageID.10546.)

According to Defendants, the Plan offered approximately 15 investment options. (ECF No. 48, PageID.1497; *see also* ECF No. 50-7 *sealed*, PageID.4046.) The options included a mix of actively managed and passively managed funds. (Expert S. Case, ECF No. 50-7, PageID.3983.) Passively managed funds simply try to track an index, while actively managed funds are "still trying to track the index" but also trying to "outperform the index" with some kind of knowledge, belief system or insight. (Charbonneau Dep., ECF No. 50-2 *Sealed*, PageID.3573.)

During the class period, defined as April 30, 2014 through the date of judgment in this action (the "Class Period"), the Plan offered a series of Principal Trust Target Date Funds ("TDFs"), known as the Principal LifeTime Hybrid Suite Collective Investment Trusts ("CITs"). (Compl. ¶ 4; Expert Dyson, ECF No. 78-3, PageID.8551.) TDFs are generally designed to "match the objectives of an individual's . . . retirement time horizon with an investment strategy that meets that." (Expert Wolkove Dep. ECF No. 50-3 *sealed*, PageID.3652.) For example, if someone is retiring in the near term, the investment strategy is "geared towards de-risking the investments . . . with a view towards achieving the near-term retirement goal." (*Id.*) Plaintiffs' claims and arguments occur against the backdrop in which Principal is the recordkeeper and 76% of the Plan's current assets are held in Principal Proprietary Investments. (Expert Dyson, 78-3 *sealed*, PageID.8568.) Further supported and specific facts regarding the investments and fees are mentioned in the analysis below where they are relevant to the claims and arguments.

This class action is brought pursuant to sections 409 and 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1109 and 1132. (Compl. ¶ 1.) As of December 31, 2018, the Plan had $1.6 billion in assets under management for all funds. (Compl. ¶¶ 5, 49, 52.) Plaintiffs allege that during the Class Period, Defendants as fiduciaries of the Plan breached the duties they owed to the Plan, to Plaintiffs and to other participants in the Plan by:

> (1) failing to objectively and adequately review the Plan's investment portfolio with due care to ensure that each investment option was prudent, in terms of cost; and (2) maintaining certain funds in the Plan despite the availability of identical or similar investment options with lower costs and/or better performance histories as required by the Plan's investment policy.

(Compl. ¶ 6.) Plaintiffs' claims are breach of the fiduciary duties of loyalty and prudence, brought against the Investment Committee Defendant and its members (First Claim), and failure to adequately monitor fiduciaries, brought against Magna, the Board and the Committee Defendants (Second Claim). (Compl. ¶¶ 9, 128-34, 135-41.) Defendants move for summary judgment on Plaintiffs' claims.

## II.   Legal Standard

Summary judgment under Federal Rule of Civil Procedure 56 is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "In making this determination, 'the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.'" *United States S.E.C. v. Sierra Brokerage Servs.*, 712 F.3d 321, 327 (6th Cir. 2013) (quoting *Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). Furthermore, the "'substantive law will identify which facts are material,' and 'summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence

is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id*. at 327 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial burden "of establishing the 'absence of evidence to support the nonmoving party's case.'" *Spurlock v. Whitley*, 79 F. App'x 837, 839 (6th Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Once the moving party has met its burden, the nonmoving party 'must present affirmative evidence on critical issues sufficient to allow a jury to return a verdict in its favor.'" *Id.* (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 403 (6th Cir. 1992)).

## III.   Analysis

### A. Claim 1: Breaches of the Fiduciary Duties of Loyalty and Prudence

"A fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries;  and – (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan . . . . ." 29 U.S.C. § 1104(a)(1)(A). The fiduciary shall act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B); *see generally Cates v. Trustees of Columbia Univ. in City of New York*, 2019 WL 8955333, at *12 (S.D.N.Y. Oct. 25, 2019) ("[Defendant] concedes that the question of whether it properly monitored the Plans' investments (or were "procedural[ly] prudent") is ill-suited for summary judgment."). "Wasting beneficiaries' money is imprudent. In devising and implementing strategies for the investment and management of trust assets, trustees are

obliged to minimize costs."[2] *Tibble v. Edison International*, 843 F.3d 1187, 1198 (9th Cir. 2016) (citing the Unif. Prudent Investor Act § 7.) "Deciding whether defendants have breached their fiduciary duty – the ultimate issue in an ERISA case – requires considering whether the overall *process* of decisionmaking was up to standard." *In re Omnicom ERISA Litigation*, 2021 WL 3292487, at *13 (S.D.N.Y. Aug. 2, 2021).

Plaintiffs' first claim for relief is asserted against the Committee and alleges breaches of the fiduciary duties of loyalty and prudence. (ECF No. 1, PageID. 40-41.) They allege that the Committee and its members (together in the Complaint as the "Prudence Defendants") "did not make decisions regarding the Plan's investment lineup based solely on the merits of each investment and what was in the best interest of Plan participants." (ECF No. 1, PageID.41, ¶131.) Specifically, Plaintiffs allege that they "selected and retained investment options in the Plan despite the high cost of the funds in relation to other comparable investments." (*Id.*) "The Prudence Defendants also failed to investigate the availability of lower-cost share classes of certain mutual funds, collective trusts, and separate accounts in the Plan." (*Id.*) Finally, the "Prudence Defendants failed to monitor or control the grossly-excessive compensation paid for recordkeeping services." (*Id.*)

Defendants break Plaintiffs' first claim into three parts: breach of the duty of prudence as to investment options, breach of the duty of prudence as to recordkeeping

---

[2] "ERISA fiduciary duties are derived from the common law of trusts, so 'courts often must look to the law of trusts' to 'determin[e] the contours of an ERISA fiduciary's duty.'" *Tibble*, 843 F.3d at 1197. "Under trust law, a trustee has a continuing duty to monitor trust investments and remove imprudent ones ... separate and apart from the trustee's duty to exercise prudence in selecting investments at the outset. [A] trustee cannot assume that if investments are legal and proper for retention at the beginning of the trust, or when purchased, they will remain so indefinitely." *Id.* (internal citations omitted).

fees and breach of the duty of loyalty. Defendants argue that there is no genuine issue of material fact regarding whether the Committee breached its fiduciary duties.

### i.      Investment Options Claims

"[E]ven in a defined-contribution plan where participants choose their investments, plan fiduciaries are required to conduct their own independent evaluation to determine which investments may be prudently included in the plan's menu of options." *Hughes v. Northwestern University*, 142 S. Ct. 737, 742 (2022) (citing *Tibble v. Edison Int'l*, 575 U.S. 523, 529-30 (2015)) (Motion to dismiss was granted by the district court. Supreme Court held that *Hughes* included claims of failing to monitor and control recordkeeping fees and offering funds in the form of retail shares carrying higher fees than those charged by otherwise identical institutional share classes.) "If the fiduciaries fail to remove an imprudent investment from the plan within a reasonable time, they breach their duty." *Id.*

Defendants rely on the recent *Smith v. CommonSpirit Health*, 37 F.4th 1160 (6th Cir. 2022), in support of their position. *CommonSpirit* is a similar class action, brought by a participant in a defined-contribution 401(k) retirement plan, claiming breach of fiduciary duty. On the defendants' motion to dismiss, the Sixth Circuit considered the plaintiffs' claims that the plan should have offered different investment options, for example, replacing actively managed mutual funds with passively managed mutual funds. *See id.* at 1162. ERISA "does not give the federal courts a broad license to second-guess the investment decisions of retirement plans. It instead supplies a cause of action only when retirement plan administrators breach a fiduciary duty by, say, offering imprudent investment options." *Id.*

The Sixth Circuit noted that "Smith as an initial matter has not plausibly pleaded that this ERISA plan acted imprudently merely by offering actively managed funds in its mix of investment options." *Id.* at 1165. "We know of no case that says a plan fiduciary violates its duty of prudence by offering actively managed funds to its employees as opposed to offering only passively managed funds. Several cases in truth suggest the opposite." *Id.*

But *CommonSpirit* does not dispose of this Plaintiffs' claim as easily. The Sixth Circuit went on to note that

> Even if *CommonSpirit* did not violate a fiduciary duty by offering actively managed plans in general, it is true, the company still could violate ERISA by imprudently offering *specific* actively managed funds. ERISA, in other words, does not allow fiduciaries merely to offer a broad range of options and call it a day. While plan participants retain the right to choose which fund is appropriate for them, the plan must ensure that all fund options remain prudent options.

*Id.* at 1165-66 (citing *Tibble*, 575 U.S. at 529; *Hughes*, 142 S. Ct. at 742). This distinction was acknowledged by district courts in the wake of *CommonSpirit*. *See, e.g.*, *Garcia v. Alticor, Inc.*, 1:20-cv-1078, 2022 WL 199919753, at *4 (W.D. Mich. Aug. 23, 2022) (Maloney, J.) (The *Garcia* plaintiffs asserted that the defendants "'failed to investigate' the option of offering passively managed funds-- not that the actively managed funds should be replaced with passively managed funds.").

Defendants argue that the Committee had a prudent process in place for monitoring investment options, and provide evidence of the written investment policy statement ("IPS") used to guide the review of the investment options. (2008 Investment Policy Statement, ECF No. 48-34; 2016 Investment Policy Statement, ECF No. 48-35.) Defendants also provide testimony and Committee materials showing that the Committee

conducted review of investment options two or four times per year and received investment updates at the meetings. (ECF No. 48, PageID.1499.) Defendants used a "watch list" to monitor investments that caused it concern and they cite to Committee materials from May 2016 as support. (ECF No. 48, PageID.1500; ECF No. 48-8, PageID.1548.)

The existence of a deliberative process does not alone resolve the issue. "While the absence of a deliberative process may be enough to demonstrate imprudence, the presence of a deliberative process does not, . . . suffice in every case to demonstrate prudence." *Sacerdote v. New York University*, 9 F.4th 95, 111 (2d Cir. 2021). "Deliberative processes can vary in quality or can be followed in bad faith. In assessing whether a fiduciary fulfilled her duty of prudence, we ask 'whether a fiduciary employed the *appropriate* methods to investigate and determine the merits of a particular investment,' not merely whether there were any methods whatsoever." *Id.*

Defendants argue that none of Plaintiffs' experts opined that any of the Plan investments was imprudent, and therefore, there is no evidence that any process would have changed the Plan investment menu. (ECF No. 48, PageID.1507.) Expert Dyson testified as follows:

Q: . . . Are you offering an opinion that the target date funds or any other fund in the Magna plan was objectively imprudent?

A. No, I'm not offering an opinion on that.

(ECF No. 50-4 *sealed*, PageID.3744.) Expert Geist was asked, "Am I correct that you're not giving any opinion about whether the investment options offered by the Magna plan were prudent?" Geist responded "Correct." (ECF No. 50-5, *sealed*, PageID.3795.) Expert Jones testified similarly when asked "You're not offering any opinion about

9

whether the Principal target date funds that were used by the plan were prudent, correct?" She answered "Correct." (ECF No. 50-6 *sealed*, PageID.3925.)

In response, Plaintiffs point out that Expert Dyson in his report "details several reasons why the Plan's TDF suite is imprudent, including that the TDF's paid for a "disproportionately large proportion of revenue share."[3] (ECF No. 78-3 *sealed*, PageID.8551, ¶15.) Dyson opined that a failure to understand revenue sharing arrangements resulted in "investment options in the Plan being evaluated based on criteria which was not in the best interest of the Plan participants." (ECF No. 78-3 *sealed*, PageID.8551.) "[T]he question is not 'whether a revenue-sharing model is within the range of reasonable choices a fiduciary might make' . . . but whether *this* revenue sharing arrangement was reasonable under all the circumstances." *Troudt v. Oracle Corp.*, 2017 WL 1100876, at *2 (D. Colo. Mar. 22, 2017) (The court declined to "adopt

---

[3] Defendants state in their response brief that "ERISA does not recognize a claim for 'inequitable' division of plan costs," then cite to *Hannan v. Hartford Financial Services, Inc.*, 2016 WL 1254195 (D. Conn. Mar. 29, 2016). It is worth noting that neither the word "inequitable" nor "equitable" appear in the *Hannan* case. *Hannan* is a class action alleging four violations of ERISA, concerning premiums on welfare benefits and life insurance plans offered to employees. The Hannan plaintiffs alleged that an agreement under which some of the discount on the basic life insurance plan was offset by increasing the premium charged to employees on the supplemental life insurance plan was an "inappropriate 'cross-subsidization and kickback scheme'" that resulted in overcharging those employees who purchased supplemental coverage. *Id.* at *1. The *Hannan* court found that "the rate structure described in the Complaint is simply not a rate structure that is prohibited by ERISA or a violation of either Defendant's fiduciary duties." *Id.* at *3 (citing *Amantangelo v. Nat'l Grid USA Serv. Co.*, 2011 WL 3687563, at *1 (W.D.N.Y. Aug. 23, 2011) ("The court noted that ERISA's fiduciary duty provisions are simply "not implicated" where an employer "makes a decision regarding the form or structure of the Plan[,] such as who is entitled to receive Plan benefits and in what amounts or how such benefits are calculated.")). The argument is not persuasive in the context of whether Defendants exercised prudence in selecting this revenue sharing plan in these circumstances.

defendants' proposal to dismiss Count I of the complaint on the theory that the plan's fee structure fell within a presumptively reasonable range of expense ratios.").

The Court agrees with Plaintiffs that the record contains evidence to "create disputed questions of fact as to whether Defendants discussed or even understood the difference between certain types of fee arrangements . . . and whether Defendants acted prudently regarding the fees paid by the Plan." *Bell v. Pension Comm. Of ATH Holding Co., LLC*, 2019 WL 387214, at *8 (S.D. Ind. Jan. 30, 2019.) Plaintiffs argue that Committee members did not have a thorough enough understanding of the Plan revenue sharing to apply it in an equitable manner. Mr. Charbonneau was asked if he knew whether the TDF share classes in the Plan were the lowest price share classes available and he responded "no, I don't know. What I do know is that we have a certain amount of revenue that we had to cover, so long as we – you know, as long as we recover that revenue from somewhere, then that's the objective." (ECF No. 7803 *sealed*, PageID.8565.) In a January 18, 2017 email from Mr. Charbonneau to Mr. Bustamante, wherein Charbonneau sought more information to understand a fee arrangement between Sun Life and Principal on certain plans, Charbonneau stated, "I'm not familiar with the revenue sharing as fee payment concept." (ECF No. 78-29 *sealed*, PageID.10510.) Defendants emphasize that Charbonneau wanted to "better understand the fee arrangement," and that his inquiry suggests diligence, not imprudence. (ECF No. 59, PageID.8226.) This argument goes to a weighing of the evidence, not simply the existence or absence of evidence.

Plaintiffs' expert Dyson also reported that the Plan fiduciaries failed to evaluate the TDFs consistent with the guidance provided by the Department of Labor. They "failed to

evaluate other possible alternatives (sic) investment options as TDFs for the Plan. The Plan fiduciaries should have especially given consideration to non-proprietary TDFs as an alternative as this is specific guidance issue (sic) by the US Department of Labor." (ECF No. 78-3 *sealed*, PageID.8570 ¶ 68.) The expert pointed to Magna employee and Committee member Wolkove's deposition for the premise that the Plan fiduciaries testified that they were not familiar with Department of Labor ("DOL") guidance. Wolkove was asked if he was familiar with the Department of Labor's February 2013 publication called "Target Date Retirement Funds—Tips for ERISA Plan Fiduciaries" and he testified that he had not read it. (ECF No. 78-5 *sealed*, PageID.8789-90.) Defendants argue that the DOL "tips" are not mandatory, that they are "tips" and not "rules," and that Dyson conflates separate bullet points in the Tips, about periodic reviews of TDFs and non-proprietary TDFs. (ECF No. 48, PageID.1509.) Again, Defendants' argument asks the Court to weigh or interpret the evidence.

Dyson also reported that "[f]or the majority of the class period the review of TDF fees and investment expenses was not consistent with what [Dyson] had observed by other plan fiduciaries in demonstrating a prudent process to oversee TDFs for the plan." (ECF No. 78-3 *sealed*, PageID.8570 ¶ 70.) Expert Dyson identified a "more robust review of Target Date Funds" contained in the March 2021 Investment Review provided by CAPTRUST, yet noted that although the review was more robust, "there is still no analysis or consideration about whether a custom or non-proprietary target date fund would be a better fit for the Plan." (Id. ¶ 71.) Wolkove testified that he did not have "a specific recollection" or memory that the Committee had ever explored nonproprietary

target date funds or collective trusts. (Wolkove Dep., ECF No. 78-5 *sealed*, PageID.8893.)

As part of the argument regarding higher-cost shares and funds, Plaintiffs allege that Defendants failed to utilize lower cost passively managed and actively managed funds. (ECF No. 53, PageID.4417.) Plaintiffs argue that "[d]uring the Class Period, the Plan fiduciaries did not consistently consider the performance of the Plan's actively managed and hybrid funds compared to other active (sic?) funds with lower expense ratios." (ECF No. 53, PageID.4417; Dyson, ECF No. 78-3 *sealed*, PageID.8572 ¶77; ECF No. 1, PageID.3 ¶¶ 5, 6, PageID.41 ¶ 131.) Plaintiffs' Expert Dyson reported that "[t]he Plan fiduciaries chose actively managed or hybrid funds (a combination of active and passive strategies) funds for the Plan which did not demonstrate convincing criteria to be expected to outperform an equivalent passive investment." (ECF No. 78-3, Page ID. 8572 ¶77.) Dyson explained that this is "not simply a hindsight look at performance numbers to justify a higher performing investment" but that the Plan fiduciaries "did not consistently consider the performance of the actively managed and hybrid funds in light of other passive alternatives or even in light of other active funds with lower expense ratios." (*Id.*)

Viewing the evidence in the light most favorable to Plaintiffs, the Plaintiffs have raised genuine issues of material fact related to whether the Defendants prudently monitored the Plan's challenged investments. The Court denies Defendants' motion for summary judgment on this claim.

ii        **Recordkeeping Costs Claims**

Defendants argue that the Committee had a prudent process for monitoring recordkeeping fees and that the evidence is undisputed. Initially, Defendants reference steps taken to reduce fees prior to the 2014 class period. In 2014, Defendants conducted a Request for Proposals (RFP) for recordkeeping services. (ECF No. 48-38.) "Mercer" was engaged to assist in the vendor search and approached several nationally known recordkeepers to submit bids. (2014 RFP: Executive Summary, ECF No. 48-39.) "The vendor search generated only one alternate vendor; (sic) Fidelity Investments. Other vendors declined to bid on the plan, citing the complexity of Magna's payroll and funding systems." (*Id.* at PageID.3251.) Fidelity's proposal was "lower than current fees at Principal" and this difference in fees was attributable to participant-initiated transactions (withdrawals, loans, distributions), which "are noticeably higher than those proposed by Fidelity." (*Id.*) Mercer's summary noted that although "fees are lower with Fidelity, the cost of switching to a new vendor may offset such costs (sic) savings." (*Id.*)

Defendants submit evidence that the Committee accepted Principal's offer, and the Core Fee was lowered, therefore the Committee's efforts reduced the Plans' recordkeeping costs from 13 to 8 basis points near the start of the class period, in approximately November 2014**.** (ECF No. 48, PageID.1504; ECF No. 48-25, PageID.3052; ECF No. 48-26, PageID.3060.) Defendants also show that they received benchmarking reports from Fiduciary Benchmarks, an independent consulting firm; Principal regularly provided a breakdown of its fees; and the payroll feeds were extraordinarily complex at Magna. (ECF No. 48, PageID.1505.)

Plaintiffs present evidence to challenge the prudence of the Committees' monitoring of recordkeeping fees. First, they argue that the RFP process in 2014 was flawed. Their expert Geist reported that the RFP "was issued in a manner that resulted in a number of recordkeepers declining to bid" and set forth other reasons that the selection of Principal to continue providing recordkeeping fees was flawed. (Geist, ECF No. 78-4 *sealed*, PageID.8689.) This was the last competitive RFP that was conducted.[4] The court in *Cunningham v. Cornell University* noted that "while competitive bidding is not required under ERISA, summary judgment has been denied where fiduciaries failed to solicit competitive bidding over a fifteen-year period and there was evidence that such failure resulted in a monetary loss." *Cunningham v. Cornell*, 2019 WL 4735876, *6 (S.D.N.Y. Sept. 27, 2019) (citation omitted). "Trustees also have an ongoing obligation to monitor the fees charged and services provided by service providers with whom a fund has an agreement, to ensure that renewal of such agreements is in the best interest of the fund." *Liss v. Smith*, 991 F. Supp. 278, 300 (S.D.N.Y. 1998). Plaintiffs also argue that Defendants predominately relied only on information provided by Principal to monitor the Plan's fees, including through documents produced by Principal. (Geist Report, ECF No. 78-4, PageID.8692 ¶ 232.)

Plaintiffs provided enough evidence to raise an issue of fact and survive summary judgment on this claim.

---

[4] Defendants recently submitted *Huang v TriNet HR III, Inc.*, 2023 WL 3092626 (M.D. Fl. Apr. 25, 2023), as supplemental authority to support their position. *TriNet* is distinguishable in that three requests for proposal (RFP) for the recordkeeping services were conducted, approximately one every three years. Here there was only one. Further, in *TriNet* the plaintiffs had relied solely on one expert's report to demonstrate that the RFP processes were flawed, and that expert's testimony was excluded with a Daubert motion at the summary judgment phase.

### iii.    Breach of Loyalty

"Under ERISA's duty of loyalty, a fiduciary 'shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries' and for the exclusive purpose of (1) providing benefits to participants and their beneficiaries and (2) defraying reasonable expenses of administering the plan." *Cassell v. Vanderbilt University*, 285 F.Supp.3d 1056, 1061-62  (M.D. Tenn. 2018). "[A] plaintiff must allege facts that permit a plausible inference that the defendant engaged in transactions involving self-dealing or in transactions that otherwise involve or create a conflict between the trustee's fiduciary duties and personal interests. . . . [T]o implicate the concept of loyalty, a plaintiff must allege plausible facts supporting an inference that a fiduciary acted *for the purpose of* providing benefits to itself or some third party." *Id.* at 1062; *see also Johnson v. Providence Health & Services*, 2018 WL 1427421, at *9 (W.D. Wa. Mar. 22, 2018) ("Having determined that Plaintiff plausibly alleged her breach of prudence claims regarding Defendants' investment management decisions, the Court concludes there is reasonable inference that Defendants breached their duty of loyalty. Some of the Fidelity investment products that were offered, for example the Freedom Fund, could have benefited Fidelity—in the form of a higher expense ratio—at the cost of Plan participants. While the complaint provides no direct evidence of self-dealing or preferential treatment for Fidelity, the inclusion and retention of various Fidelity investment products is circumstantial evidence that Defendants did not act "with an eye single toward beneficiaries' interests.")

In this case, Plaintiffs have pointed out that the Principal has interests in both recordkeeping and the proprietary TDF funds. The Court finds that Plaintiffs have provided enough evidence to survive summary judgment on the loyalty claim.

### B. Claim II: Whether Magna, the Board and Committee Defendants Failed to Adequately Monitor Other Fiduciaries

Defendants first argue that if there is no triable issue on Claim I, then Claim II cannot survive summary judgment either. The Northern District of Ohio pointed out in a 2016 case that the "Sixth Circuit has yet to determine whether an underlying breach of fiduciary duty is required for failure-to-monitor liability" but that other district courts within the Sixth Circuit "have held that a failure to monitor claim does not survive absent a predicate breach of fiduciary duty by a monitored fiduciary." *Saumer v. Cliffs Natural Resources Inc.*, 2016 WL 8668509, *8 (N.D. Ohio Apr. 1, 2016) (citations omitted).

Defendants argue that the second reason this claim should fail is that there is no evidence that the Board appointed Committee members, therefore the Board had no fiduciary control over the conduct alleged by Plaintiffs. "ERISA's duty to monitor applies only to a person or entity that has the power to appoint and remove an ERISA fiduciary." *Fish v. Greatbanc Trust Co.*, 2016 WL 5923448, *49 (N.D. Ill. Sept. 1, 2016). In their response, Plaintiffs fail to identify any evidence that would support a failure to monitor claim. They make a conclusory allegation that they "will be able to prove at trial that Magna, if not the Board, failed to adequately monitor the committee." They do not identify any evidence as to who has the power to appoint or remove or to otherwise exercise control over the committee members or the conduct alleged in the complaint. The Court will grant Defendants' motion on Plaintiffs' second claim for relief: failure to adequately monitor other fiduciaries.

**IV.     Conclusion**

For the reasons set forth above, the Court grants in part and denies in part Defendants' motion for summary judgment (ECF No. 48). The Court grants Defendants' motion as to Plaintiffs' second claim: failure to adequately monitor other fiduciaries. The Court denies the remainder of Defendants' motion for summary judgment.

SO ORDERED.

<u>s/Nancy G. Edmunds</u>
Nancy G. Edmunds
United States District Judge

Dated: June 5, 2023

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 5, 2023, by electronic and/or ordinary mail.

<u>s/Lisa Bartlett</u>
Case Manager