# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MELVIN DAVIS, DAKOTA KING,
SCOTT E. VOLLMAR, CORY L.
HARRIS, and BOBBY R.
GARRETT, III, individually and on
behalf of all others similarly situated,

              Plaintiffs,

    v.

MAGNA INTERNATIONAL OF
AMERICA, INC., et al.,

              Defendants.

Case No. 2:20-cv-11060-NGE-EAS

Hon. Nancy G. Edmunds
Magistrate Elizabeth A. Stafford

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, MAINTAINING CLASS CERTIFICATION FOR SETTLEMENT PURPOSES AND APPROVING PLAN OF ALLOCATION

Plaintiffs Scott E. Vollmar, Cory L. Harris, and Bobby R. Garrett, III ("Plaintiffs"), participants in the Magna Group of Companies Retirement Savings Plans (the "Plan"), hereby respectfully move this Court, pursuant to FED. R. CIV. P. 23, for an Order:

1.     Granting final approval to the class action settlement in this action on the terms of the Class Action Settlement Agreement ("Settlement Agreement"), fully executed on August 1, 2024, and previously filed with the Court on August 1, 2024 (ECF No. 114-1);

2.     Maintaining class certification of this action pursuant to the Court's Opinion and Order Granting Plaintiffs' Motion for Class Certification on January 25, 2024 (ECF No. 104) and Amended Preliminary Approval Order (ECF No. 118);

3.      Finding that the manner in which the Settlement Class was notified of the Settlement was the best practicable under the circumstances and adequately informed the Settlement Class members of the terms of the Settlement, how to lodge an objection and obtain additional information; and

4.     For such other and further relief as the Court may deem just and proper.

The grounds for this Motion are set forth in the following papers filed contemporaneously herewith:

1.     Memorandum of Law in support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, Maintaining Class Certification for

Settlement Purposes, and Approval of Plan of Allocation; and

2.      Declarations of Plaintiffs' Counsel, Plaintiffs, and Settlement/Notice Administrator.

Attached hereto is the proposed Final Approval Order and Judgment in the form agreed to by the Parties.

Dated:  November 6, 2024                    Respectfully submitted,

**CAPOZZI ADLER, P.C.**

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh
James A. Maro
James A. Wells
312 Old Lancaster Road
Merion Station, PA 19066
Telephone: (610) 890-0200
Facsimile: (717) 233-4103
Email: markg@capozziadler.com
          jamesm@capozziadler.com
          jayw@capozziadler.com

**MUHIC LAW LLC**
Peter A. Muhic
923 Haddonfield Road, Suite 300
Cherry Hill, NJ 08002
Phone: (856) 324-8252
Fax:   (717) 233-4103
Email: peter@muhiclaw.com

**ANTHONY L. DELUCA, PLC**
Anthony L. DeLuca (P-64874)
14950 East Jefferson Avenue, Suite 170
Gross Pointe Park, MI 48230

Phone: (313) 821-5905
Fax: (313) 821-5906
Email: anthony@aldplc.com

*Attorneys for Plaintiffs, the Plan
and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 6, 2024, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By:  /s/ *Mark K. Gyandoh*
      Mark K. Gyandoh, Esq.

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| MELVIN DAVIS, DAKOTA KING, SCOTT E. VOLLMAR, CORY L. HARRIS, and BOBBY R. GARRETT, III, individually and on behalf of all others similarly situated, | Case No. 2:20-cv-11060-NGE-EAS |
| Plaintiffs, | Hon. Nancy G. Edmunds Magistrate Elizabeth A. Stafford |
| v. | |
| MAGNA INTERNATIONAL OF AMERICA, INC., et al., | |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, MAINTAINING CLASS CERTIFICATION FOR SETTLEMENT PURPOSES AND APPROVING PLAN OF ALLOCATION

## **TABLE OF CONTENTS**

I.      INTRODUCTION ....................................................................................1

II.     BACKGROUND ......................................................................................2

        A.     Procedural History and Settlement Negotiations ...................2

        B.     The Proposed Settlement...........................................................4

        C.     The Notice Plan Has Been Effectively Implemented ...........5

III.    THE PROPOSED SETTLEMENT SHOULD BE APPROVED .................7

        A.     Legal Standards .........................................................................7

        B.     The Settlement Satisfies the Sixth Circuit's Test Underscoring
               Its Fairness, Reasonableness, and Adequacy .........................9

               1.   The risk of fraud or collusion.......................................9

               2.   The complexity, expense and likely duration of the
                    litigation ........................................................................9

               3.   The amount of discovery engaged in by the parties ...............12

               4.   The likelihood of success on the merits...................13

               5.   The opinions of class counsel and class representatives ..........16

               6.   The reaction of absent class members .....................18

               7.   The public interest.......................................................19

IV.     THE REQUIREMENTS OF FED. R. CIV. P. 23(e)(2) IS SATISFIED ......20

        A.     Effectiveness of Plan Distribution .......................................20

        B.     Terms of Proposed Attorneys' Fees......................................21

        C.     Equitable Treatment of Class Members...............................22

i

V.    THE PLAN OF ALLOCATION SHOULD BE FINALLY
      APPROVED ...................................................................................22

VI.   FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS
      WARRANTED................................................................................23

      A.    The Proposed Class Meets the Requirements of Rule 23(b)(1)
            of the Federal Rules of Civil Procedure...............................23

VII.  CONCLUSION...............................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<span style="font-variant: small-caps">CASES</span>

*Beach v. JPMorgan Chase Bank, N.A.*,
No. 17-cv-563, 2019 WL 2428631 (S.D.N.Y. June 11, 2019)................................24

*Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*,
504 F. Supp. 3d 265 (S.D.N.Y. 2020) ...............................................................22

*In re BellSouth Corp. ERISA Litig.*,
No. 02-cv-2440, 2006 WL 431178 (N.D. Ga. Dec. 5, 2006) ..................................15

*Boley v. Universal Health Servs., Inc.*,
36 F.4th 124 (3d Cir. 2022) ...............................................................................24

*Borders v. Alternate Solution Health Network, LLC*,
No. 20-cv-1273, 2021 WL 4868512 (S.D. Ohio May 17, 2021)...........12, 17, 19, 21

*Brent v. Midland Funding, LLC*,
No. 11-cv-01332, 2011 WL 3862363 (N.D. Ohio Sept. 1, 2011) ...........................10

*In Re Broadwing, Inc. ERISA Litigation*
252 F.R.D. (S.D. Ohio 2006) ..............................................................................19

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) ......................................................................18

*Carr v. Guardian Healthcare Holdings, Inc.*,
No. 20-cv-6292, 2022 WL 501206 (S.D. Ohio Jan. 19, 2022)........................*Passim*

*Cassell v. Vanderbilt Univ.*,
No. 16-cv-2086, 2018 WL 5264640 (M.D. Tenn. Oct. 23, 2018)...........................24

*Cates v. Trustees of Columbia Univ.*,
No. 16-cv-06524, 2021 WL 4847890 (S.D.N.Y. Oct. 18, 2021) ............................22

*Cunningham v. Cornell Univ.*,
No. 16-cv-6525, 2019 WL 275827 (S.D.N.Y. Jan. 22, 2019)...............................25

*In re Delphi Corp. Sec., Derivative & ERISA Litig.*,
248 F.R.D. 483 (E.D. Mich. 2008) .................................................................*Passim*

*Does 1–2 v. Déjà Vu Servs., Inc.*,
925 F.3d 886 (6th Cir. 2019) ...........................................................................7, 14

*Doe v. Ohio*,
No. 91-cv-464, 2020 WL 728276 (S.D. Ohio Feb. 12, 2020)..................................8

*Dover v. Yanfeng US Automotive Interior Systems I LLC*,
No. 20-cv-11643, 2023 WL 2309762 (E.D. Mich. Mar. 1, 2023)...............10, 13,15

*Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
No. 15-cv-22782, 2017 WL 7798110 (S.D. Fla. Dec. 18, 2017) ...........................17

*Forman v. TriHealth, Inc.*,
40 F.4th 443 (6th Cir. 2022) ................................................................................15

*Ganci v. MBF Inspection Services, Inc.*,
No. 15-cv-2959, 2019 WL 6485159 (S.D. Ohio Dec. 3, 2019) .................10, 17, 19

*Garner Prop. & Mgmt., LLC v. City of Inkster*,
No. 17-cv-13960, 2020 WL 4726938 (E.D. Mich. Aug. 14, 2020) .................15, 18

*Granada Investments, Inc. v. DWG Corp.*,
962 F. 2d 1203 (6th Cir. 1992) ..............................................................................8

*Griffin v. Flagstar Bancorp, Inc.*
2013 WL 6511860 (E.D. MI*)* ........................................................................21, 23

*Iannone et al., v. Autozone, Inc., et al.*,
No. 19-cv-02779-MSN-tmp (W.D. Tenn. Dec. 07, 2022) .....................................24

*In re Ikon Office Solutions, Inc., Securities Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000)............................................................................23

iv

*IUE-CWA v. Gen. Motors Corp.*,
238 F.R.D. 583 (E.D. Mich. 2006) ........................................................................18

*Jacobs v. Verizon Communications, Inc. et al.*,
No. 16-cv-1082, 2020 WL 5796165 (S.D.N.Y. Sept. 29, 2020) ...........................24

*Jones v. H&J Restaurants, LLC*,
No. 19-cv-105, 2020 WL 6877577 (W.D. Ky. Nov. 23, 2020)................................9

*Karpik v. Huntington Bancshares Inc.*,
No. 17-cv-1153, 2021 WL 757123 (S.D. Ohio Feb. 18, 2021)......................*Passim*

*Kruger v. Novant Health, Inc.*,
No. 14-cv-208, 2016 WL 6769066 (M.D.N.C. Sept. 29, 2016)...............................22

*Law v. National Collegiate Athletic Ass'n*,
108 F.Supp.2d 1193 (D. Kan. 2000).......................................................................23

*Millstein v. Holtz*,
No. 21-cv-61179, 2022 WL 18024840 (S.D. Fla. Dec. 30, 2022) .........................22

*Mullins v. Data Management Co.*,
No. 20-cv-214, 2021 WL 2820560 (S.D. Ohio June 21, 2021)..........................8, 19

*Nunez v. B. Braun Med., Inc.*,
2023 WL 5339620 (E.D. Pa. Aug. 18, 2023) .........................................................16

*In re Packaged Ice Antitrust Litig.*,
Case No. 08-md-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011)...............21

*Peck v. Air Evac EMS, Inc.*,
No. 18-cv-615, 2019 WL 3219150 (E.D. Ky. July 17, 2019) ..................................8

*Pizarro v. Home Depot, Inc.*,
No. 18-cv-01566, 2020 WL 6939810 (N.D. Ga. Sept. 21, 2020) ..........................24

*Pledger v. Reliance Trust Co.*,
No. 15-cv-4444, 2021 WL 2253497 (N.D. Ga. Mar. 8, 2021).........................10, 21

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.,*
636 F.3d 235 (6th Cir. 2011) .................................................................................14

*In re Prandin Direct Purchaser Antitrust Litigation,*
No. 10-cv-12141, 2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) .........................21

*Ramos v. Banner Health*,
No. 15-cv-2556, 2020 WL 6585849 (D. Colo. Nov. 10, 2020) .............................11

*Sacerdote v. New York Univ.*,
No. 16-cv-6284, 2018 WL 840364 (S.D.N.Y. Feb. 13, 2018) ................................24

*In re Schering-Plough Corp. Enhance ERISA Litig.*,
No. 08-cv-1432, 2012 WL 1964451 (D.N.J. May 31, 2012) ..................................11

*Shy v. Navistar Int'l Corp.,*
No. 92-cv-00333, 2022 WL 2125574 (S.D. Ohio June 13, 2022)..................*Passim*

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
No. 12-cv-83, 2014 WL 2946459 (E.D. Tenn. June 30, 2014) ...............................21

*Smith v. Commonspirit Health*,
37 F.4th 1160 (6th Cir. 2022) ................................................................................15

*Stengl v. L3Harris Technologies*,
No. 22-cv-572 (M.D. Fla. June 5, 2023)................................................................24

*In re Suntrust Banks, Inc. ERISA Litig.*,
No. 08-cv-03384, 2016 WL 4377131 (N.D. Ga. Aug. 17, 2016)...........................24

*Swigart v. Fifth Third Bank,*
No. 11-cv-88, 2014 WL 3447947 (S.D. Ohio July 11, 2014) ................................19

*UAW v. GMC,*
497 F.3d 615 (6th Cir. 2007) .......................................................................8, 14, 15

*Vassalle v. Midland Funding LLC,*
708 F.3d 747 (6th Cir. 2013) ...................................................................................6

*Vellali v. Yale Univ.*,
33 F.R.D. 10 (D. Conn. 2019)......................................................................24

*Wachala v. Astella US LLC*,
No. 20-cv-3882, 2022 WL 408108 (N.D. Ill. Feb. 10, 2022)..................24

*In re Wachovia Corp. ERISA Litig.*,
No. 09-cv-262, 2011 WL 7787962 (W.D.N.C. Oct. 24, 2011) ..............11

*Williams v. Vukovich*,
720 F.2d 909 (6th Cir. 1983) ...................................................................16

## STATUTES

FED. R. CIV. P. 23 ..............................................................................7, 25

FED. R. CIV. P. 23(b)(1) .........................................................................23

FED. R. CIV. P. 23(c) .........................................................................7, 10

FED. R. CIV. P. 23(e)(2) .....................................................................20, 22

FED. R. CIV. P. 23(e)(2)(C)(ii) ...........................................................20, 21

FED. R. CIV. P. 23(e)(2)(C)(iii) ...............................................................20

## Other Sources

1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.41
(4th Ed. 2002) .........................................................................................9

Employee Retirement Income Security Act of 1974......................................*Passim*

Restatement (Third) of Trusts § 100 cmt. b(1) .......................................16

## I.     INTRODUCTION

On August 28, 2024, the Court preliminarily approved the Settlement in this Action, which provides for the creation of a $2,900,000.00 Settlement Fund. *See* ECF No. 118 ("Preliminary Approval Order"). The Court's Preliminary Approval Order also, *inter alia*, modified the previously certified Class as a Settlement Class and appointed Plaintiffs as class representatives and Capozzi Adler, P.C. ("Capozzi Adler") as Class Counsel. *Id*. Class Counsel for the Settlement Class and Plaintiffs believe each of these findings in the Preliminary Approval Order should be made final because the proposed Settlement represents an outstanding recovery. In particular, the Settlement represents roughly 31% of the potential best-case damages as calculated by Plaintiffs. This Settlement was achieved after months of vigorous arms-length negotiations between counsel experienced in ERISA class actions and with the aid of two mediation sessions, one with a third-party private mediator, Robert A. Meyer of JAMS, and a subsequent settlement conference with United States Magistrate Judge Elizabeth A. Stafford.

The Settlement Class has received full and fair notice of the terms of the Settlement through individualized direct mail along with a dedicated internet Settlement website, and toll-free number in accordance with the Preliminary Approval Order. After mailing the approved form of Notice of Class Action Settlement to the approximately 68,689 potential Settlement Class members, there

1

has thus far been one purported objection to the Settlement, representing 0.00145% of participants.[1]   Accordingly, Plaintiffs respectfully request this Court to enter the proposed Final Approval Order and Judgment approving the Settlement.

While Defendants do not agree with all averments and statements made in the instant memorandum, Defendants agree with the ultimate relief sought by Plaintiffs and submit that the Court should approve the settlement in this matter.

## II.   BACKGROUND[2]

### A.   Procedural History and Settlement Negotiations[3]

To avoid unnecessary repetition, the full procedural history of this matter is set forth in the Gyandoh Decl. at ¶¶ 3-29; *See also* Memorandum in Support of Preliminary Approval of Settlement, ECF No. 113, at pp. 3-7.   In pertinent part, on June 7, 2023, plaintiffs Melvin Davis, Dakota King, Scott E. Vollmar, Cory L. Harris, Bobby R. Garrett, III, and Gracie Mercer, filed the First Amended

---

[1] The objection is addressed below.   Per the schedule established by this Court in the Preliminary Approval Order, the objection deadline has not yet elapsed. *See* ECF No. 118, ¶ 10 (setting December 6, 2024 as the objection deadline). To the extent any further objections are filed regarding the Settlement or requested attorneys' fees, or any other aspect of the Settlement, Class Counsel will address the objection(s) in a supplemental filing to this Court in advance of the Final Approval Hearing no later than December 30, 2024. *Id.*

[2] The full procedural history of this matter is recounted in the Declaration of Mark Gyandoh ("Gyandoh Decl.") at ¶¶ 3-30.

[3] The full procedural history of this matter is recounted in the Gyandoh Decl. at ¶¶ 3-29.

Complaint. *See* ECF No. 94. Defendants filed their Answer to Plaintiffs' First Amended Complaint on June 21, 2023. *See* ECF No. 95. Later, the Parties filed a Joint Stipulation of Dismissal (ECF No. 96) on June 23, 2023, dismissing plaintiff Gracie Mercer. On January 25, 2024, the Court issued an Opinion and Order Granting Plaintiffs' Motion for Class Certification. *See* ECF No. 104. Then, on January 26, 2024, the Court issued an Order of Reference to United States Magistrate Judge to conduct a settlement conference. *See* ECF No. 105.

Subsequently, on February 8, 2024, Defendants filed a Petition for Permission to Appeal from a Class Certification Order with the United States Court of Appeals for the Sixth Circuit. *See* 6th Cir. ECF No. 1-2. Plaintiffs (Respondents) filed their Response in Opposition to Defendants' Petition for Permission to Appeal on February 21, 2024. *See* 6th Cir. ECF No. 13-1.

The Settling Parties also conducted extensive discovery. *See* Gyandoh Decl. at ¶¶ 31-45. Discovery led to the production of approximately 50,000 plus pages of documents and eight fact witness depositions. *Id*. In addition, the Parties exchanged a total of five expert reports, three for Plaintiffs, and two for Defendants, and all five experts were also deposed. *Id*.

The Parties voluntarily attended a mediation session on November 28, 2023, with Robert A. Meyer of JAMS, who is well-versed and experienced in mediating ERISA matters. Gyandoh Decl. at ¶¶ 46-49; *see also* curriculum vitae of Mr. Meyer

at https://www.jamsadr.com/meyer/. Prior to the mediation, Plaintiffs sent Defendants their initial settlement demand. *Id.* The mediation did not lead to a settlement. However, on May 3, 2024, the Parties attended a settlement conference with Magistrate Judge Elizabeth A. Stafford, where the Parties reached a settlement in principle.

### B. The Proposed Settlement

Through arm's length negotiations and discovery, Magna (or its insurers) will pay $2,900,000.00 – the Gross Settlement Amount – to be allocated to participants on a *pro rata* basis pursuant to the proposed Plan of Allocation (*see* Exhibit B to Settlement Agreement) in exchange for releases and dismissal of this action, described in Article 7 of the Settlement Agreement. The Gross Settlement Amount will be used to pay the participants' recoveries, administrative expenses to facilitate the Settlement, and Plaintiffs' counsel's attorneys' fees and costs, and Class Representatives' Case Contribution Awards if awarded by the Court. *See* Gyandoh Decl. at ¶ 52. The Settlement Class is defined (as modified by the Court's Preliminary Approval Order) as:

> All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Plan, at any time between April 30, 2014 through the date of entry of this Preliminary Approval Order [August 28, 2024].

Preliminary Approval Order, ECF No. 118, ¶ 1.

Plaintiffs and Settlement Class members will provide a release and covenant-not-to-sue to Defendants and the other Released Parties covering the claims which were or could have been asserted in the Action based on the facts alleged in the Complaint filed in this case. *See* Settlement Agreement at Article 7.

## C.     The Notice Plan Has Been Effectively Implemented

Pursuant to the Preliminary Approval Order, Class Counsel has overseen the issuance of the Court-approved Class Notice. Class Counsel retained Analytics LLC ("Analytics") to serve as settlement and notice administrator. *See* Declaration of Settlement Administrator in Support of Plaintiffs' Motion for Final Approval signed by Jeffrey Mitchell ("Analytics Decl.") (attached as Exhibit 2 to the Gyandoh Declaration). On September 26, 2024, Defendants provided Analytics with spreadsheets containing, among other information, the names, mailing addresses, and social security numbers for a total of 68,689 unique Settlement Class Members. *See* Analytics Decl. at ¶ 6. Notice was mailed on October 11, 2024. *Id.* at ¶ 8. Analytics updated the Settlement Class member address information by conducting a "skip trace" and then cross-referencing the addresses with the U.S. Postal Service National Change of Address database. *Id.* at ¶ 7. As of November 6, 2024 "out of 68,689 Notices … only 2,192 (approximately 3.19%) were ultimately undeliverable as of the date of this declaration." *Id.* at ¶ 11.

Accordingly, the notice program was extremely successful. The notice

program apprised Settlement Class members of the terms of the Settlement, and of their right to object to any or all of the terms of the Settlement, Plan of Allocation, Case Contribution Awards, or to Class Counsel's motion for award of attorneys' fees and reimbursement of litigation expenses. The Class Notice was also posted on a dedicated website – www.401kretirementplansettlement.com (launched on October 11, 2024) – through which the public, and the Plan's current and former participants could view: (1) case and settlement documents for download; (2) contact information for Class Counsel; and (3) email, phone, and U.S. mail contact information for Analytics." *See* Analytics Decl. at ¶ 12. On October 11, 2024, Analytics also established a case-specific toll-free number for Settlement Class members to call to obtain information regarding the Settlement. *Id*. at ¶ 13.

As the Sixth Circuit has noted:

> Additionally, we have held that "due process requires that notice to the class be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

*Does 1–2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 900 (6th Cir. 2019)         (quoting *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 759 (6th Cir. 2013)). Here the notice program includes direct mail notice to absent class members, reaching close to a 100% success rate, and is supplemented by a settlement website and a toll-free telephone number, thus constituting the "best notice practicable." *See Shy v. Navistar Int'l Corp.,* No. 92-cv-00333, 2022 WL 2125574, at \*5 (S.D. Ohio June

13, 2022) ("The notice program provided Class Members with a clear and concise statement of their rights. The notices directed Class Members to the settlement website or a toll-free number for additional information regarding how they could object to the settlement. The notice program more than met the requirements of Rule 23 and due process.") (citations omitted); *Carr v. Guardian Healthcare Holdings, Inc.*, No. 20-cv-6292, 2022 WL 501206, at *5 (S.D. Ohio Jan. 19, 2022) ("According to Analytics, 479 of the 490 Class Members, or 97.8%, received the notice. This reflects well on the notice process used in this case.)" Indeed, the Court previously found the combination of the direct-mail Class Notice and dedicated Settlement website and phone number was adequate to inform Settlement Class members of the terms of the proposed Settlement, how to lodge an objection, and how to obtain additional information. *See* Preliminary Approval Order at 7 ("The Court finds that . . . the process described in this order and in the Agreement are the best notice practicable under the circumstances, and satisfy the requirements of Rule 23(c) and Due Process.").

## III.   THE PROPOSED SETTLEMENT SHOULD BE APPROVED

### A.   Legal Standards

When assessing whether a proposed settlement "is fair, reasonable, and adequate", Courts within the Sixth Circuit evaluate seven "UAW Factors":

(1) the risk of fraud or collusion;

(2) the complexity, expense and likely duration of the litigation;

(3) the amount of discovery engaged in by the parties;

(4) the likelihood of success on the merits;

(5) the opinions of class counsel and class representatives;

(6) the reaction of absent class members; and

(7) the public interest

*Peck v. Air Evac EMS, Inc.*, No. 18-cv-615, 2019 WL 3219150, at *7 (E.D. Ky. July 17, 2019) (citing *UAW v. GMC*, 497 F.3d 615, 641 (6th Cir. 2007)). "The Court 'enjoys wide discretion in assessing the weight and applicability of these factors.'" *Doe v. Ohio*, No. 91-cv-464, 2020 WL 728276, at *3 (S.D. Ohio Feb. 12, 2020) (citing *Granada Investments, Inc. v. DWG Corp.*, 962 F. 2d 1203, 1205-06 (6th Cir. 1992)).

Futhermore, there is an overriding public interest in settling litigation, particularly in class actions. *See, e.g., Peck*, 2019 WL 3219150, at *8 ("There is a strong policy favoring settlement in class actions."); *Jones v. H&J Restaurants, LLC*, No. 19-cv-105, 2020 WL 6877577, at *3 (W.D. Ky. Nov. 23, 2020) ("Courts in this Circuit reason that settlement is often in the public interest because it puts an end to what are sometimes complex and unpredictable cases and because settlement promotes judicial economy."); *Mullins v. Data Management Co.*, No. 20-cv-214, 2021 WL 2820560, at *4 (S.D. Ohio June 21, 2021) ("There is an especially strong presumption in favor of voluntary settlements in class actions ... where substantial

judicial resources can be conserved by avoiding formal litigation.") (internal citations omitted.)

**B.     The Settlement Satisfies the Sixth Circuit's Test Underscoring Its Fairness, Reasonableness, and Adequacy**

**1.     The risk of fraud or collusion**

In the Sixth Circuit, settlements are presumed fair unless evidence proves otherwise. "Settlements resulting from arm's length negotiations conducted by competent counsel are *prima facie* fair." *Shy*, 2022 WL 2125574, at \*6 (S.D. Ohio June 13, 2022) (citing 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.41 at 90 (4th Ed. 2002)); *see also Carr*, 2022 WL 501206, at \*5 ("Courts presume the absence of fraud or collusion unless there is evidence to the contrary."); *Karpik v. Huntington Bancshares Inc.*, No. 17-cv-1153, 2021 WL 757123 at \* 4 (S.D. Ohio Feb. 18, 2021) (same); *In re Delphi Corp. Sec., Derivative & ERISA Litig.*, 248 F.R.D. 483, 501 (E.D. Mich. 2008) (same). Here, the proposed Settlement was only achieved after contentious motion to dismiss, class certification, and summary judgment briefing, months of arms-length negotiations with a neutral mediator and magistrate judge. *See* Gyandoh Decl. at ¶¶ 3-49. This settlement is not the result of fraud or collusion.

**2.     The complexity, expense and likely duration of the litigation**

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Shy*, 2022 WL

2125574, at *6 (quoting *Brent v. Midland Funding, LLC*, No. 11-cv-01332, 2011 WL 3862363, at *16 (N.D. Ohio Sept. 1, 2011). Courts consider a settlement appropriate when it will "result in the saving of time and money to the Parties and serve judicial economy." *Ganci v. MBF Inspection Services, Inc.,* No. 15-cv-2959, 2019 WL 6485159, at *4 (S.D. Ohio Dec. 3, 2019). And like *Ganci*, without a settlement this case would endure "additional pre-trial motions, case management conferences and hearings, and trial preparation, which would result in the expenditure of many additional hours of effort" with the potential for additional lengthy and risky appellate proceedings. *Id*. Many courts in this Circuit and around the country have found ERISA cases are especially complex. *See, e.g.*, *Dover v. Yanfeng US Automotive Interior Systems I LLC,* No. 20-cv-11643, 2023 WL 2309762, at *5 (E.D. Mich. Mar. 1, 2023) ("ERISA class actions are complex, and the record shows that counsel fought ably to vindicate their clients' interests in the face of rapidly evolving law regarding fiduciary duties under ERISA."); *Karpik*, 2021 WL 757123, at *4 ("The complexity inherent in class actions is amplified in ERISA class actions"); *Pledger v. Reliance Trust Co.*, No. 15-cv-4444, 2021 WL 2253497, at *7 (N.D. Ga. Mar. 8, 2021) ("[e]ffectively and successfully litigating an ERISA breach of fiduciary action requires a specialized knowledge and expertise that was demonstrated by Class Counsel. This litigation involved highly technical knowledge of investment plans, investment knowledge, and industry practices.");

*Ramos v. Banner Health*, No. 15-cv-2556, 2020 WL 6585849, at *4 (D. Colo. Nov. 10, 2020) ("ERISA is 'an enormously complex and detailed statute.'"); *In re Schering-Plough Corp. Enhance ERISA Litig.*, No. 08-cv-1432, 2012 WL 1964451, at *5 (D.N.J. May 31, 2012) ("ERISA class actions based on the same theories as the present matter involve a complex and rapidly evolving area of law."); *In re Wachovia Corp. ERISA Litig.*, No. 09-cv-262, 2011 WL 7787962, at *4 (W.D.N.C. Oct. 24, 2011) ("ERISA litigation of the type presented here is a rapidly evolving and demanding area of the law. New precedents are frequently issued, and the demands on counsel and the Court are complex and require the devotion of significant resources.").

This Action has been litigated for over three and a half years, including mediations, a motion to dismiss, a motion for summary judgment, a motion for class certification, a petition for permission to appeal the class certification decision, and significant and meaningful discovery. Indeed "trials on the ERISA issues presented have been few and far between and the few decisions on summary judgment and adjudications on the merits in this area demonstrate the heavy burdens that Plaintiffs might ultimately have to face if the case were not resolved by settlement." *In re Delphi Corp.*, 248 F.R.D. at 497.

The Settlement Agreement provides a greater benefit to Class Members than the complexity, expense, and duration of continued litigation.

### 3.     The amount of discovery engaged in by the parties

This factor weighs in favor of approving the settlement because "the Parties have engaged in sufficient and substantial discovery, both formal and informal, that allows them to understand their respective positions." *Shy*, 2022 WL 2125574, at *6. In addition to the ample information gathered prior to filing the Action, including Plaintiffs' account statements and publicly available Plan information, the Parties engaged in substantial fact and expert discovery resulting in the production of over 50,000 pages of documents from Defendants, the taking of eight fact witness depositions, and the exchange of five expert reports, three of whom were Plaintiffs' experts. Gyandoh Decl. at ¶¶ 31-45.

In evaluating this factor, Courts consider "not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *Carr*, 2022 WL 501206, at *5. More than enough discovery has been conducted to allow Plaintiffs and Defendants to understand their respective positions and calculate accurate damages models. *See, e.g.*, *Borders v. Alternate Solution Health Network, LLC*, No. 20-cv-1273, 2021 WL 4868512, at *3 (S.D. Ohio May 17, 2021) ("Defendant has culled and furnished voluminous timesheets and other data to Plaintiff during the course of discovery, which gave parties a better handle on the strengths and weaknesses of their respective cases. The parties aver that, absent settlement, continued litigation will require much more discovery and

briefing, possibly a trial and even an appeal."); *Carr*, 2022 WL 501206, at *6 ("the Court finds that the parties engaged in substantial investigation. The parties exchanged written discovery and relevant information, including payroll and other wage data for Defendant in order for the parties to construct a proper damages model and perform an appropriate Expected Value calculation."). In the analogous ERISA case, *Dover v. Yanfeng US Automotive Interior Systems I LLC.*, the court found this factor satisfied because "counsel's preliminary investigation included reviewing Yanfeng's annual reports, auditors' reports, and participants' account statements, as well as interviewing plan participants. Counsel also reviewed thousands of pages of non-public materials regarding the plan provided by the Defendants, including meeting agendas, meeting minutes, fiduciary reviews, fund analysis supplements, participant fee disclosures, and other disclosures" *Dover,* 2023 WL 2309762, at *3. Here, Counsel has done the same and more. The discovery conducted by the Parties supports the fairness, reasonableness, and adequacy of the settlement.

### 4.    The likelihood of success on the merits

During mediation, Plaintiffs focused on the recordkeeping allegations portion of their case as that was likely the most viable of Plaintiffs' claims in their assessment. Plaintiffs' expert opined the Plan paid an average of $73 per participant from 2014 through 2020 when the reasonable fee should have been $30 per participant during that time-frame. This resulted in claimed damages of

approximately $9.3 million, inclusive of interest. Gyandoh Decl., ¶ 50. Defendants

disputed Plaintiffs' calculations, asserting that even under Plaintiffs' theory of the

case, recordkeeping damages were far lower. In sum, the Settlement represents

31.2% recovery of the potential damages as calculated by Plaintiffs. The proposed

settlement is fair, reasonable, and adequate in light of the risks of further litigation

and the likely maximum amount of recovery if the case was litigated to its conclusion

on the merits.[4]

  "Of the *UAW* factors, '[t]he most important of the factors to be considered in

reviewing a settlement is the probability of success on the merits.'"

*Déjà Vu Servs*., 925 F.3d at 895 (*quoting Poplar Creek Dev. Co. v. Chesapeake

Appalachia, L.L.C.,* 636 F.3d 235, 245 (6th Cir. 2011)); *see also Shy*, 2022 WL

2125574, at *6 (same); *Carr*, 2022 WL 501206, at *6 (same). However, "[t]he court

---

[4] *See Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 8:15-cv-01614 (ECF No.
185) (C.D. Cal. July 30, 2018) (approving $12 million ERISA 401(k) settlement that
represented approximately 25% of estimated total damages of $47 million); *Johnson
v. Fujitsu Tech. & Business of America, Inc.*, 2018 WL 2183253, at *6-7 (N.D. Cal.
May 11, 2018) (approving $14 million ERISA 401(k) settlement that represented
"just under 10% of the Plaintiffs' most aggressive 'all in' measure of damages"); *In
re Rite Aid Corp. Sec. Litig.*, 146 F.Supp.2d 706, 715 (E.D. Pa. 2001) (noting that
since 1995, class action settlements have typically "recovered between 5.5% and
6.2% of the class members' estimated losses"); *Medoff v. CVS Caremark Corp.*,
2016 WL 632238, at *6 (D.R.I. Feb. 17, 2016) (settlement providing recovery of
5.33% of maximum recoverable damages was well above the median percentage of
settlement recoveries in comparable securities class action cases); *Baker v. John
Hancock Life Ins. Co.*, No. 1:20-cv-10397-RGS (ECF No. 67) (D. Mass. June 2,
2021) (preliminarily approving $14 million recovery therefore representing
estimated 23% of the investment damage).

'is not to decide whether one side is right or even whether one side has a better of these arguments. . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual dispute.'" *Garner Prop. & Mgmt., LLC v. City of Inkster,* No. 17-cv-13960, 2020 WL 4726938, at *9 (E.D. Mich. Aug. 14, 2020) (*quoting UAW*, 497 F.3d at 632). This matter, like many ERISA matters, involved competing factual interpretations and complicated questions of law. As the Court in *Dover* aptly stated:

> The key questions in this case turn on an assessment by a factfinder of whether defendants and other plan fiduciaries breached their duties of prudence regarding certain investment fund options. As evidenced by recent Sixth Circuit decisions, such as *Smith v. CommonSpirit Health*, 37 F.4th 1160 (6th Cir. 2022), and *Forman v. TriHealth, Inc.*, 40 F.4th 443 (6th Cir. 2022), the law regarding fiduciary duties under ERISA is nuanced and rapidly developing. The certainty provided by the monetary settlement in this case outweighs the risks of Plaintiffs potentially receiving nothing if the matter were to proceed to trial."

*Dover,* 2023 WL 2309762, at *3; *see also In re Delphi Corp.*, 248 F.R.D. at 496-97 ("Plaintiffs admit that risk is inherent in any litigation, particularly class actions. The risk is even more acute in the complex areas of ERISA law"); *In re BellSouth Corp. ERISA Litig.*, No. 02-cv-2440, 2006 WL 431178, at *5 (N.D. Ga. Dec. 5, 2006) ("the rapid influx of new [ERISA] precedents presents an ever changing legal landscape, and there is a constant risk that the law will change before judgment."). *Karpik*, 2021 WL 757123, at *5 ("Even if Plaintiffs established a fiduciary breach, it is 'difficult'

15

to measure damages in cases alleging imprudent or otherwise improper investments.") (*quoting* Restatement (Third) of Trusts § 100 cmt. b(1)).

Lastly, the undersigned is particularly qualified to realistically evaluate the risks of continued litigation, as Capozzi Adler, P.C. tried an analogous case to an unfavorable verdict for plaintiffs in *Nunez v. B. Braun Med., Inc.*, 2023 WL 5339620 (E.D. Pa. Aug. 18, 2023). *See* Gyandoh Decl. at ¶ 91. The Settlement Agreement guarantees immediate relief for the Class and avoids serious risks of further proceedings shrinking, eliminating, or prolonging relief.

### 5. The opinions of class counsel and class representatives

"The Sixth Circuit has observed that when experienced counsel immersed in the legal and factual issues comprising a class action recommend approval of their class settlement, their recommendations are entitled to deference." *Shy*, 2022 WL 2125574, at *7 (quoting *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983)). Both Plaintiffs' counsel and Defendants' counsel are experienced in ERISA class actions of this type and approve of the Settlement. As discussed in greater detail in the Gyandoh Declaration, the vast experience of Class Counsel in analogous actions weighs strongly in favor of the fairness of the proposed Settlement, a Settlement which Class Counsel firmly stands behind. *See* Gyandoh Decl., ¶¶ 78-84. Counsel for Defendants, Sidley Austin, LLP, are one of the preeminent firms in the country defending        analogous        ERISA        class        actions.        *See*

16

https://www.sidley.com/en/services/erisa-litigation. Courts within the Sixth Circuit have similarly found this factor met when counsel on both sides believe the settlement is fair and reasonable. *See, e.g., Borders*, 2021 WL 4868512, at *3 ("By agreeing to this settlement, counsel for both parties have indicated their shared belief that the Settlement Agreement is fair, reasonable, and adequate" and "[t]he Court gives great weight to the beliefs of experienced counsel").

Additionally, the Class Representatives who have dedicated time and energy to this matter also find the Settlement fair, reasonable and adequate. This weighs in favor of approval. *See, e.g., Karpik*, 2021 WL 757123, at *6 ("Moreover, the Class Representatives previously submitted declarations in support of the Settlement. *See* ECF Nos. 67-07 to 67-13. Their support also favors approval."); *Ganci*, 2019 WL 6485159, at *5 ("Class Plaintiff also approves of the settlement, as indicated by his executing the settlement agreement."). Lastly, it is noteworthy that the settlement was reached under the guidance of an ERISA experienced mediator and the magistrate judge. *See, e.g., Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 15-cv-22782, 2017 WL 7798110, at *2 (S.D. Fla. Dec. 18, 2017) (approving a settlement where "the parties retained a highly qualified ERISA lawyer as their private mediator to assist them in negotiating the Settlement. The Parties were well-represented by highly experienced counsel with class and complex litigation

experience, and counsel have represented to this Court that they recommend the fairness of the Settlement.").  These factors support approval of the Settlement.

### 6.    The reaction of absent class members

Class Notice was mailed to over 68,689 potential Settlement Class Members and to date, only one objection has been lodged, representing 0.00145% of Class Members who received notice.[5]

Mr. Michael Moon offered a generic handwritten objection to the Settlement without actually addressing any of the facts alleged in the lawsuit or the Sixth Circuit factors the Court must consider in evaluating the fairness of the Settlement.  *See* ECF No. 120.  Rather, Mr. Moon represented that he enjoyed his time working for Victor Manufacturing Magna International and that he "will not participate in this lawsuit." *Id*. Accordingly, Mr. Moon's objection lacks any merit.

"A certain number of opt-outs and objections are to be expected in a class action. If only a small number are received, that fact can be viewed as indicative of the adequacy of the settlement.'" *Garner Prop. & Mgmt*., 2020 WL 4726938, at \*10. (*quoting In re Cardizem CD Antitrust Litig*., 218 F.R.D. 508, 527 (E.D. Mich. 2003)); *see also IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 600 (E.D. Mich. 2006) (Approving settlement when there were "very few objections to the parties'

---

[5] As noted above, the objection deadline is December 6, 2024. *See* ECF No. 118 at ¶ 10. Any additional objections will be addressed in Plaintiffs' supplemental filing due on December 30, 2024. *Id*.

Settlement. Out of more than 32,000 class members, only 37 individuals—about one-tenth of one percent—submitted 34 objections."); *Carr*, 2022 WL 501206, at *7 ("the Class Members' reactions strongly support approval. No Class Member requested exclusion from the settlement or objected to the settlement."); *In re Delphi Corp.,* 248 F.R.D. at 501 (same); *Shy*, 2022 WL 2125574, at *7 (same); *Ganci*, 2019 WL 6485159, at *5 (same); *Borders*, 2021 WL 4868512, at *4 ("only two class members opted out and none objected to the Settlement, resulting in a class inclusion rate of approximately 99.5%. As such, this factor strongly supports approval."). Thus, only one objection to date weighs in favor of Settlement Approval.

### 7. The public interest

In general, "[p]ublic policy favors settlement of class action lawsuits." *Mullins,* 2021 WL 2820560, at *6 (*quoting Swigart v. Fifth Third Bank*, No. 11-cv-88, 2014 WL 3447947, at *4 (S.D. Ohio July 11, 2014)). *See also Borders*, 2021 WL 4868512, at *4 (same). Specifically, regarding ERISA matters, "[p]rotecting retirement funds of workers is of genuine public interest." *In Re Broadwing*, 252 F.R.D. at 381-82. Courts within this Circuit find this factor satisfied when "the Agreement provides class members immediate relief, avoids further litigation, and frees the Court's judicial resources." *Id*.; *see also Ganci*, 2019 WL 6485159, at *5 ("In this case, the Settlement confers immediate benefits on the Settlement Class, avoids the risks and expense in further litigation, and conserves judicial resources.

The undersigned therefore finds that this factor favors approving the settlement."). As mentioned above, this case involves complex issues and without a settlement would remain in the judicial system for a lengthy duration at the risk of lessor or no relief to Plan participants. Thus, the public benefit of settling this case weighs in favor of finding the settlement fair, reasonable, and adequate.

## IV. THE REQUIREMENTS OF FED. R. CIV. P. 23(e)(2) IS SATISFIED

Under FED.R.CIV.P. 23(e)(2), the Court is to consider when determining whether to grant final approval the following factors: (1) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;" (2) "the terms of any proposed award of attorney's fees, including timing of payment;" and (3) whether "the proposal treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(C)(ii), (C)(iii) and (D).[6]

### A. Effectiveness of Plan Distribution

The proposed Plan of Allocation, described *infra* in Section V., describes a plan of allocating the Net Settlement Amount to Class Members utilized in other analogous ERISA matters and is highly effective. Current Plan participants – those who still maintain accounts in the Plan – will have payments made directly into their

---

[6] There are no agreements other than the Settlement Agreement, thus FED.R.CIV.P. 23(e)(2)(c)(iv) is irrelevant.

accounts.  Former participants – those who no longer maintain a Plan account – shall be paid directly by the Settlement Administrator.

### B.    Terms of Proposed Attorneys' Fees

The Settlement does not excessively compensate Class Counsel. The Settlement is not contingent on Class Counsel receiving a specific amount of fees and any fees they receive will be determined by the Court. The amount of fees Class Counsel is requesting, a third of the Settlement Fund, is reasonable and consistent with the awards in other ERISA cases. This amount is in line with analogous awards in ERISA class action cases so the requirement of Rule 23(e)(2)(C)(ii) will likely be met. *See, e.g., Griffin,* 2013 WL 6511860, at *8 ("This requested fee is consistent with standard fee awards as a percentage of the fund in ERISA actions which typically award between 30% and 33% on a percentage of the fund fee calculation.").[7]

---

[7] *See also Ganci,* 2019 WL 6485159, at *6 (awarding one third of the common fund); *In re Packaged Ice Antitrust Litig.,* Case No. 08-md-01952, 2011 WL 6209188, at *19 (E.D. Mich. Dec. 13, 2011) (same); *In re Prandin Direct Purchaser Antitrust Litigation,* No. 10-cv-12141, 2015 WL 1396473, at *4 (E.D. Mich. Jan. 20, 2015) (same); *Swigart v. Fifth Third Bank,* 2014 WL 3447947, at *7; *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 12-cv-83, 2014 WL 2946459, at *1-3 (E.D. Tenn. June 30, 2014) (same); *Borders,* 2021 WL 4868512 at *4 (same); *Karpik*, 2021 WL 757123, at *7(same); *Mullins*, 2021 WL 2820560, at *6 (same); *Pledger*, 2021 WL 2253497 (same); *Fernandez*, 2017 WL 7798110, at *4 (same); *McDonald v. Edward Jones*, 791 Fed.Appx. 638, 640 (8th Cir. 2020) (affirming judgment awarding the class counsel attorneys' fees of 1/3 of the settlement fund); *Kruger v. Novant Health, Inc.*, No. 14-cv-208, 2016 WL 6769066, at *6 (M.D.N.C. Sept. 29, 2016); *Cates v.*

## C.    Equitable Treatment of Class Members

The Settlement does not unduly favor the Plaintiffs. Plaintiffs' shares of the Settlement will be based on the Plan of Allocation, a formula based on the losses to their Plan account. Further, the Plan of Allocation agreed to by the Parties clearly treats Class Members equitably relative to each other because each member is entitled to their *pro rata* share of losses and all Settlement Class members will receive at least $10.00. This *pro rata* allocation method is commonly deemed equitable in ERISA cases. *See, e.g., Karpik,* 2021 WL 757123 at *13; *In re Delphi Corp.,* 248 F.R.D. at 491–93; *Millstein v. Holtz,* No. 21-cv-61179, 2022 WL 18024840, at *7 (S.D. Fla. Dec. 30, 2022). While Plaintiffs also intend to request Case Contribution Awards, the Settlement is not contingent on Plaintiffs receiving an award in a specified amount and the amount Plaintiffs intend to request is in line with the awards in other cases as explained in the Fee Motion.

Given the above, Rule 23(e)(2) is satisfied.

## V.    THE PLAN OF ALLOCATION SHOULD BE FINALLY APPROVED

"Approval of a plan of allocation of a settlement fund in a class action is

---

*Trustees of Columbia Univ.*, No. 16-cv-06524, 2021 WL 4847890 (S.D.N.Y. Oct. 18, 2021); *Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*, 504 F. Supp. 3d 265, 270 (S.D.N.Y. 2020) (listing ERISA cases awarding one-third of settlement fund); *see also* Fee Motion.

'governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate.'" *Griffin*, 2013 WL 6511860, at *7 (quoting *In re Ikon Office Solutions, Inc., Securities Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000)). "In general, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable." *Law v. National Collegiate Athletic Ass'n*, 108 F.Supp.2d 1193, 1195 (D. Kan. 2000). The proposed Plan of Allocation here, attached to the Settlement Agreement as Exhibit B, is premised on calculating a Settlement Class member's distribution on a *pro rata* basis based on account balances, a proxy for the alleged losses. No payment to any Settlement Class member shall be smaller than ten dollars ($10.00). Any Settlement Class Member whose payment pursuant to Section D of the Plan of Allocation is less than ten dollars ($10.00) shall receive a distribution of ten dollars ($10.00). *See* Plan of Allocation at Section D. Further, current participants will receive their share of the Settlement Fund through a distribution to their Plan account. *Id*. at Section E.

## VI.   FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED

### A.   The Proposed Class Meets the Requirements of Rule 23(b)(1) of the Federal Rules of Civil Procedure

Since entry of the Preliminary Approval Order, nothing has changed in the record to compel the Court to now reach a different conclusion with respect to the

final approval of the Settlement Class. Indeed, courts across the country have

determined breach of fiduciary duty claims under ERISA analogous to those at issue

in this action are uniquely appropriate for class treatment.[8] To avoid unnecessary

repetition, Plaintiffs incorporate their arguments from their memorandum in support

of preliminary approval[9] and request the Court make the same findings it did in the

Preliminary Approval Order certifying the following Settlement Class as:

> All persons, except Defendants and their immediate family
> members, who were participants in or beneficiaries of the Plan,

---

[8] *See, e.g., Sacerdote v. New York Univ.*, No. 16-cv-6284, 2018 WL 840364, at *6 (S.D.N.Y. Feb. 13, 2018) ("Most ERISA class action cases are certified under Rule 23(b)(1)."); *Wachala v. Astella US LLC*, No. 20-cv-3882, 2022 WL 408108, at *1 (N.D. Ill. Feb. 10, 2022) (certifying claims brought pursuant to ERISA § 502(a)(2)); *Nunez v. B. Braun Medical, Inc.*, No. 20-cv-04195 (E.D. Pa. June 30, 2022) (same); *Stengl v. L3Harris Technologies*, No. 22-cv-572 (M.D. Fla. June 5, 2023) (same); *Pizarro v. Home Depot, Inc*., No. 18-cv-01566, 2020 WL 6939810 (N.D. Ga. Sept. 21, 2020) (same); *Boley v. Universal Health Servs., Inc*., 36 F.4th 124 (3d Cir. 2022) (same); *In re Suntrust Banks, Inc. ERISA Litig*., No. 08-cv-03384, 2016 WL 4377131, at *8 (N.D. Ga. Aug. 17, 2016) (same); *Iannone et al., v. Autozone, Inc., et al.*, No. 19-cv-02779-MSN-tmp (W.D. Tenn. Dec. 07, 2022) (same); *Jacobs v. Verizon Communications, Inc. et al.*, No. 16-cv-1082, 2020 WL 5796165 (S.D.N.Y. Sept. 29, 2020) (same); *Karg v. Transamerica Corp.*, 2020 WL 3400199 (N.D. Iowa Mar. 25, 2020) (certifying class alleging defendants breached fiduciary duties by selecting poorly performing investment options); *Vellali v. Yale Univ.*, 33 F.R.D. 10 (D. Conn. 2019) (certifying class in case alleging fiduciaries saddled retirement plan with investment options that charged excessive management fees); *Cunningham v. Cornell Univ.*, No. 16-cv-6525, 2019 WL 275827 (S.D.N.Y. Jan. 22, 2019) (same*); Beach v. JPMorgan Chase Bank, N.A.*, No. 17-cv-563, 2019 WL 2428631 (S.D.N.Y. June 11, 2019) (same); *Cassell v. Vanderbilt Univ.*, No. 16-cv-2086, 2018 WL 5264640 (M.D. Tenn. Oct. 23, 2018) (same).

[9] *See* ECF No. 113, pp. 9-10, incorporating by reference Plaintiffs' memorandum and supporting declarations in support of their motion for class certification (ECF Nos. 44, 45, 81, 97, 100, and 101).

at any time between April 30, 2014 through the date of entry of
this Preliminary Approval Order [August 28, 2024].

Preliminary Approval Order at ¶ 1.

## VII. CONCLUSION

For the reasons set forth above, the Settlement meets the standard for final

approval under Rule 23 and Plaintiffs respectfully ask the Court to enter the

proposed Final Approval Order and Judgment.

Dated: November 6, 2024                Respectfully submitted,

**CAPOZZI ADLER, P.C.**

*/s/ Mark K. Gyandoh*
Mark K. Gyandoh
James A. Maro
James A. Wells
312 Old Lancaster Road
Merion Station, PA 19066
Telephone: (610) 890-0200
Facsimile: (717) 233-4103
Email: markg@capozziadler.com
       jamesm@capozziadler.com
       jayw@capozziadler.com

**MUHIC LAW LLC**
Peter A. Muhic
923 Haddonfield Road, Suite 300
Cherry Hill, NJ 08002
Phone: (856) 324-8252
Fax:   (717) 233-4103
Email: peter@muhiclaw.com

**ANTHONY L. DELUCA, PLC**
Anthony L. DeLuca (P-64874)

25

14950 East Jefferson Avenue, Suite 170
Gross Pointe Park, MI 48230
Phone: (313) 821-5905
Fax: (313) 821-5906
Email: anthony@aldplc.com

*Attorneys for Plaintiffs, the Plan*
*and the Proposed Class*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 6, 2024, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

By:     <u>*/s/ Mark K. Gyandoh*</u>
Mark K. Gyandoh, Esq.